T. J. CLEGG v. GULF, COLORADO & SANTA FE RAILWAY COMPANY
ET AL.

No. 2159.    Decided May 10, 1911.

**1.—Evidence—Deposition—Interested Notary.**

A deposition taken by a notary who was at the same time attorney for another litigant interested in proving the same facts sought to be established, as a basis for recovery in his own case was properly suppressed on motion. The notary should be disinterested. (Pp. 283, 284.)

**2.—Same—Cases Discussed.**

Floyd v. Rice, 28 Texas, 341; Blum v. Jones, 86 Texas, 495; Festard v. Butler, 20 Texas Civ. App., 106, followed. McGrew v. Wilson, 57 S. W., 63; Paris, M. & S. P. Ry. Co. v. Stokes, 41 S. W. 484, distinguished. (P. 284.)

**3.—Practice—Examination of Witness.**

The conduct of counsel in merely asking a witness an improper question is not ground for reversal, especially when the evidence sought is such as counsel might fairly deem admissible. (Pp. 284, 285.)

**4.—Practice in Supreme Court—Sufficiency of Evidence.**

The Supreme Court will not reverse on account of the insufficiency of the evidence where there is any to support the finding.   (P. 285.)

**5.—Assignment of Error Charge.**

An assignment of error in a charge in that it improperly construed the effect of a written contract, does not raise the question whether such charge is upon the weight of evidence.   (P. 286.)

**6.—Carrier—Contract—Quarantine—Dipping Infected Cattle. .**

The dipping in petroleum of cattle shipped from localities infected by ticks, as a precaution required of shippers by the quarantine laws for preventing communication of splenic fever, is not such part of their transportation by rail that third persons contracting with the carrier to furnish facilities to enable shippers to comply with the law become thereby either partners with or agents of the carrier in performing the latter's contract for transportation.   (Pp. 286, 287.)

**7.—Contract—Charge—Weight of Evidence.**

An instruction that a letter introduced in evidence did not constitute a contract to furnish water at certain dipping pens for cattle though correct as to the effect of the letter by itself, is held to be a charge on the weight of evidence where in connection with other proof, such letter was proper to be considered as evidence tending to confirm the conclusion that such contract was made.   (Pp. 287, 289.)

Error to the Court of Civil Appeals, Second District, in an appeal from Tarrant County.

Clegg sued the Gulf, C. & S. F. Ry. Co. and the Atchison, T. & S. F. Ry. Co.   Both defendants had judgment.   On plaintiff's appeal it was affirmed as to the former company and reversed and remanded as to the latter, which company, as well as the plaintiff, then obtained writ of error.

*Bell & Milam,* for plaintiff in error, Clegg.—It is no ground for the suppression of a deposition that the same was taken by the attorney for another party who had a suit against the same defendant in which some of the same issues were involved as were involved in the case in which the deposition was taken.   McGrew v. Wilson, 57 S. W., 63; Paris, etc., Ry. Co. v. Stokes, 41 S. W., 484.

The question asked was highly improper, and it appeared from the verdict of the jury that they must have been influenced by the improper question, although the answer to it was excluded by the court.   Missouri P. Ry. Co. v. Mitchell, 72 Texas, 171; McFadden v. Missouri, K. & T. Ry. Co., 41 Texas Civ. App., 350; Lone Star Brewing Co. v. Voit, 84 S. W., 1100.

While the Supreme Court will not ordinarily review the action of the Court of Civil Appeals in passing upon the sufficiency of the evidence to support the findings, still when there is no conflict in the evidence the question then becomes one of law for the determination of the Supreme Court.   Federal Statutes, sec. 4386; Burns v. Chicago, M. & S. P. Ry. Co., 104 Wis., 646; N. C. & S. F. Ry. Co. v. Higgie, 86 Ga., 210.

*Terry, Cavin & Mills* and *Chas. K. Lee,* for plaintiff in error, Atchison, T. & S. F. Ry. Co.—That it is the duty of the court to charge on the legal effect of written instruments where such instruments are clear

and unambiguous and that it is error to leave the construction and legal effect thereof to the jury, see: Shepherd v. White, 11 Texas, 358; Soell v. Hadden, 85 Texas, 187; Ash v. Beck, 68 S. W., 53; Tinsley v. Penniman, 12 Texas Civ. App., 591; Gulf, C. & S. F. Ry. Co. v. Malone, 25 S. W., 1077; Lynch v. Paris Lbr. Co., 14 S. W., 701.

That a charge as to the legal effect of a written instrument offered in evidence is not objectionable as bearing on the weight of the evidence, see: Willis v. Hudson, 72 Texas, 605; San Antonio v. Lewis, 9 Texas, 71; Tinsley v. McIlhenny, 30 Texas Civ. App., 352.

Same counsel for Gulf, C. & S. F. Ry. Co.—That one of the defendants was instrumental in having the father of the witness indicted and prosecuted for alleged complicity in murder or assassination, if such fact was known to or believed by the witness, was certainly as potent and powerful a circumstance to arouse the resentment, anger and hatred as against the particular party who assisted in such prosecution, as could possibly be imagined, and the fact of such participation, or the belief in the same on the part of the witness, was a proper matter of inquiry, as effecting the weight to be given to his testimony. 2 Enc. of Evidence, 406; Bradner on Evidence, 21; 1 Greenleaf on Evidence (Lewis' ed.), sec. 450; Reynolds on Evidence, 154, 155; Houston, E. & W. T. v. McCarty, 40 Texas Civ. App., 364; Wentworth v. Crawford, 11 Texas, 132; Evansich v. Gulf, C. & S. F., 61 Texas, 24; Lumber Co. v. Denham, 88 Texas, 208; Missouri, K. & T. v. Cherry, 97 S. W., 712.

Mr. Justice Ramsey delivered the opinion of the court.

This suit was instituted in the District Court of Tarrant County, Texas, by T. J. Clegg against the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railway Company to recover damages against both companies growing out of an alleged violation of a contract by the Atchison, Topeka & Santa Fe Ry. Co. in respect to the shipment of certain cattle and as to the other defendant for delay in transportation. The Court of Civil Appeals, in its opinion, makes the following statement of the case, which we adopt:

"In his (Clegg's) petition he alleged that the cattle were unnecessarily delayed in shipping, roughly handled, and were without water for an unreasonable length of time, by reason of all of which some of the cattle died and the market values of others were greatly depreciated. At Red Rock the cattle were placed in a pasture to be grazed preparatory for market in the following fall. They were shipped from a section of the country south of the quarantine line, and as Red Rock was north of that line, under the quarantine regulations it was necessary to dip them in crude petroleum oil before they were taken from the stock pens at Red Rock. In his petition plaintiff alleged that prior to the shipment the Atchison, Topeka & Santa Fe Railway Company, through its duly authorized agent, contracted and agreed that it would furnish water for the cattle in its stock pens at Red Rock upon their arrival to the end that they might be watered before they were dipped. The cattle were dipped

in crude petroleum oil as a preventive against the dissemination of Texas splenic fever to other cattle in that vicinity. Plaintiff further alleged that there was no water in the pens at Red Rock upon the arrival of the cattle, that the cattle being very thirsty, were thereby caused to drink the oil while being dipped and by reason thereof suffered injury from the effects of which some of them died and the market values of others depreciated. Plaintiff further alleged that the tendency of cattle to drink the oil under such circumstances was discussed between plaintiff and the agent of the Atchison road at the time said contract was made by that company and that the assurance by that company that it would furnish water for the cattle in the pens at Red Rock was the inducement which led him to route the cattle over the road of the last named defendant. The issue whether or not cattle when thirsty will drink petroleum oil while being dipped in it was sharply contested. Many witnesses testified in the affirmative and many testified to the contrary."

A trial in the District Court resulted in a judgment in favor of both companies. In the Court of Civil Appeals the judgment, as to the Gulf, Colorado & Santa Fe Railway Company, was affirmed, and as to the Atchison, Topeka & Santa Fe Railway Company was reversed and the cause remanded. Both Clegg and the Atchison, Topeka & Santa Fe Railway Company made applications to this court for writs of error, which applications having been granted the case was submitted on briefs and oral argument for both parties in interest. Clegg assigned three grounds in his application for a writ of error on which, as he contends, the judgment in favor of the Gulf, Colorado & Santa Fe Railway Company should be reversed. These grounds we will notice in the order presented.

(1). It is urged that the Court of Civil Appeals erred in holding that the trial court properly suppressed the deposition of one McCoy. The ground of this motion was, in substance, that the deposition of McCoy was taken by a notary who was his counsel and who represented him in his suit against the same defendant in respect to a transaction substantially identical with the one here in litigation, or, it, at least, involved the issue as to whether the Atchison, Topeka & Santa Fe Railway Company had agreed to furnish water at its pens at Red Rock, Oklahoma. We think undoubtedly the conclusion at which the Court of Civil Appeals arrived as to this matter is sound and any departure from the rule there laid down would be fraught with most serious results and consequences. As was well said by Chief Justice Brown, of this court, in the case of Rice v. Ward, 93 Texas, 532: "The method of taking the testimony, in the absence of the parties and their attorneys, by written interrogatories propounded to witnesses, is an innovation upon the common law, and the substantial requirements of the statute should be strictly complied with. Garner v. Cutler, 28 Texas, 182; Laird v. Ivens, 45 Texas, 621. Our statute does not prescribe qualifications for the officer before whom depositions may be taken, but our court has established that he must be impartial between the parties, and whatever gives to his relation the character of employment by one party will disqualify the officer and subject the deposition, on proper objection,

to be suppressed. Floyd v. Rice, 28 Texas, 341; Blum v. Jones, 86 Texas, 495; Testard v. Butler, 20 Texas Civ. App., 106." This is in accordance with the rule generally obtaining and is to our minds undoubtedly sound. Without reference to however honest one may be who is undertaking to take a deposition of a witness who has then pending a suit involving the same issues of fact which the notary as counsel is committed to by his employment, it seems to us that his attitude is of necessity so at variance and out of harmony with the required attitude of impartiality as that a deposition so taken should not be receivable in evidence. The temptation and inducement is so strong and the attitude and bias of necessity so pronounced as to make it unsafe and unwise to permit a deposition so taken to be used. The cases cited by counsel for Clegg do not, we think, sustain a different rule. In the case of McGrew v. Wilson, 57 S. W., 63, the notary taking the deposition was not, when same was taken, an attorney for the party, and was not in any sense, when he acted as notary, laboring under any disqualification. The fact of a subsequent employment could not visit his former act with any infirmity or bias. The case of Paris, M. & S. P. Ry. Co. v. Stokes, 41 S. W., 484, was a case where a deposition was taken by a brother of one of the attorneys who had a contingent fee in the case. There it is evident there was no suggestion that the notary taking the deposittion was himself in any sense, by interest or otherwise, disqualified to take the deposition, or laboring under any disability or possessing any quality of unfairness or partisanship such as would render him unfit to serve in the capacity of a notary. We think the rule quoted in the opinion of the Court of Civil Appeals from Cyclopedia of Law and Procedure, volume 13, page 851, is perhaps the clearest statement of the rule which we have seen. It is to this effect: "The Commissioner must stand indifferent between the parties. If he directly or indirectly bear to either party such a relation as would authorize a presumption of bias or prejudice in favor of or against either party he is not competent."

(2). Again, it is urged that the Court of Civil Appeals erred in overruling his motion for a new trial because of misconduct of counsel for the railway companies in asking the witness George L. Miller if his (witness' father) had not been indicted. The bill of exception in respect to this matter shows that while the witness Miller was on the witness stand he had stated, in substance, that a good many years ago there had been some feeling between his family and the Atchison, Topeka & Santa Fe Railway Company, but that there was no ill feeling at the time of the trial on their part. Counsel for the Atchison company then proceeded thus far with his question: "Your father was indicted——" Objection was made to the question without stating the ground therefor and was promptly sustained by the court. When counsel for Clegg said, "Your Honor will instruct the jury——" there was quite a sharp colloquy between the witness and counsel asking the question. The jury were thereupon retired and counsel for the railway company made this statement to the court: "I want to ask if his (witness' father) was not indicted for alleged participation in the killing of one Montgomery, who was a special

agent of the Santa Fe Railroad at Winfield, Kansas, and that if he and his family did not believe that the Santa Fe Railroad was instrumental in the prosecution, and that if they did not have feeling against the Atchison, Topeka & Santa Fe on that account." After this statement was made the objection was renewed and was sustained by the court and the question was not at any time answered by the witness. We think it can not be doubted that it is the rule ordinarily recognized that the mere asking of a question, the answer to which is inadmissible, should not be held to have the effect to operate as a reversal, even if it should be considered that the question was improper and the evidence sought to be adduced thereby, inadmissible. It was held in the case of Missouri Pacific Ry. Co. v. Mitchell, 72 Texas, 171, that "if it should appear that during a trial questions were propounded to witnesses apparently to establish things that did not exist, and to which it was known the witnesses could not testify, or apparently to prove such things in a mode in which they could not be proved, with a view to make a false impression on the jury, then such conduct would be reprehensible, and in such case, if looking to the entire record, there was reason to believe the jury had been influenced by such course, this would furnish ground for reversal." In this case it is unnecessary to decide whether it would not have been proper for the court to have admitted the testimony proffered. It certainly can not be said that it was clearly inadmissible. The bill does not question the good faith of counsel in asking the question objected to. It certainly would be a dangerous rule to say that a question asked in good faith under the honest belief that it was proper and that the testimony sought to be adduced thereby was admissible, should constitute reversible error where such question related merely to facts out of which it was supposed would grow a bias on the part of a witness. It should be remembered, too, that the matter asked about had no relation to the plaintiff, nor was it sought to connect him with the killing inquired about. As we view the matter there seems to be no merit in this contention.

(3). Finally as to plaintiff in error Clegg it is urged that the verdict of the jury is contrary to and unsupported by the testimony both as to the Atchison, Topeka & Santa Fe Railway Company and as to the Gulf, Colorado & Santa Fe Railway Company. In view of the disposition we shall make of the case as to the Atchison company, it becomes unnecessary, and, indeed, it would be improper for us to comment upon the weight of the evidence. In reading the testimony it has not convinced us that it can be said a verdict as to the Gulf, Colorado & Santa Fe Railway Company was wholly unsupported by the testimony. This court is not authorized to reverse a case where there is any evidence to support the issue found by the jury and to support the conclusion upholding such finding of the jury by the Court of Civil Appeals. It follows from what we have said that, if we are correct, the judgment of the Court of Civil Appeals as to the Gulf, Colorado & Santa Fe Railway Company should be and it is hereby in all things affirmed.

(4). The application of the Atchison, Topeka & Santa Fe Railway Company, as to which company the judgment of the District Court

was by the Court of Civil Appeals reversed, was granted on the ground, in substance, that the decision of the Court of Civil Appeals conflicted with certain decisions of this court.

Its first assignment of error is as follows: "The Honorable Court of Civil Appeals erred in sustaining appellant Clegg's fourth assignment of error in said court, which was as follows: 'Because the court erred in giving the second special charge requested by the defendant, which was to the effect that Miller Bros. were neither the agents of the defendant, the Atchison, Topeka & Santa Fe Railway Company, for the dipping of the cattle, nor its partners in the dipping, because such charge was not warranted by the contract between the said Miller Bros., and the defendant, the Atchison, Topeka & Santa Fe Railway Company, offered in evidence, nor by any other evidence offered in the case.'" Among other grounds urged in support of this assignment of error is that there was no complaint or contention made by Clegg in his assignment of error in the court below that this charge was upon the weight of the evidence. This contention, we think, is correct. The assignment, as we read it, challenges the charge in respect to the Miller Bros.' contract for the reason that it contains an improper construction of the contract and one not warranted by its terms and not that same was a charge upon the weight of the testimony. This charge so complained of is as follows: "You are charged that under the contract offered in evidence by the defendant, the Atchison, Topeka & Santa Fe Railway Company, between the Atchison, T. & S. F. Ry. Co. and Miller Brothers, that the Atchison, Topeka & Santa Fe Railway Company was in no way bound or obligated to dip cattle at Red Rock, and that Miller Brothers were neither its agents for the dipping of the cattle, nor its partners in the dipping, and you will be controlled by this charge as the law of this case on the matter referred to in determining your verdict in this case." It is well settled that the Courts of Civil Appeals are not authorized to reverse a case except conformably to and based upon a legitimate construction of the assignments of error filed therein. It is claimed, however, that the court erred in its construction of the contract and that under its terms the Atchison company was bound and obligated to dip the cattle at Red Rock and that it was so bound and connected in its contract and obligation with Miller Brothers as to be responsible for all the acts and things done by them in pursuance thereof. This claim and contention was made, as we understand, in the belief and on the theory that the attitude of the Atchison company in respect to Miller Brothers was similar to that occupied by sleeping car companies, in respect to which it has been held that the railway company was liable for injuries inflicted by their negligence. We can not think that the analogy is a fair one. In those cases the contracts are in respect to and parts of the contracts of carriage of passengers for their convenience and in aid of the company's business as carriers of passengers. No such intimate relations are here shown and the dipping of the cattle constituted no part of the contract of carriage and was not in aid of same any more than if there had been an arrangement for the unloading of the cattle for pasturage by Miller Brothers.

We think undoubtedly that on request it would have been proper for the court to have further and more clearly instructed the jury that this charge with reference to the legal effect of the contract with Miller Brothers was not to be understood in any sense as effecting or denying a recovery on other facts, if, under proper instruction, the jury should find the liability to have attached.

(5). On the trial the court gave, at the instance of the Atchison, Topeka & Santa Fe Railway Company, the following instruction: "You are charged that the letter from F. S. Brooks, offered in evidence by the plaintiff, does not constitute a contract on the part of the Atchison, Topeka & Santa Fe Railway Company, to furnish water in the pens at Red Rock. You are therefore charged that unless you find that a contract by the Atchison, Topeka & Santa Fe Railway Company to furnish water in the pens at Red Rock was made at some time or place, under other instructions that may be given you by the court, then you will find for the defendant, the Atchison, Topeka & Santa Fe Railway Company, and so say by your verdict." This was held by the Court of Civil Appeals to be a charge on the weight of the evidence. It is urged in the application for writ of error by the Atchison company that the conclusion of the Court of Civil Appeals, holding this charge to be an instruction upon the weight of the evidence, was erroneous. We think it should be held that this letter, of itself, does not constitute a contract. It is not necessary to decide whether by its terms it may constitute a ratification of a contract, but we have no doubt that taken in connection with other testimony it is to be considered as evidence on the question as to whether or not a contract had been made with Conway substantially as claimed by Clegg and that the effect of the charge would be to minimize, if not withdraw from the consideration of the jury, said letter as confirmatory of other evidence and the testimony of Brooks directly connected therewith. From the earliest days in this State trial judges have been prohibited from charging upon the weight of the testimony, and this rule, time out of mind, has been jealously guarded, and any instruction which may fairly, from its effect, tend to express an opinion upon the weight of the testimony or to withdraw from the jury a consideration of evidence, even of a corroborative character, must be held to be an infraction of the prohibitory rule. In this case it should be remembered that the contract of transportation involved a carriage over both of the lines of railroad and was for the benefit of both companies and one in which they had a common interest. Clegg testifies at the time of making the contract as alleged with Conway that his shipment had been solicited by the Frisco system and that they were offering him inducements to put in vats for dipping the cattle and that, during some interviews with Conway and Wood, Miller was also there urging the shipment of the cattle to Red Rock, and that during the conversation Conway assured him that they would have plenty of water there in plenty of time; he also says that Conway was the general live stock agent for the Santa Fe; that he was the general live stock agent for the Atchison, Topeka & Santa Fe Railway Company, and adds: "I think he answers the correspondence of the shipments

over the Gulf, Colorado & Santa Fe Railway Company as well; that I know him as the general live stock agent of the Santa Fe, and that I met him with another one of their live stock agents, Mr. Wood, at Ponca City, in the latter part of February, 1906." That he had another conversation with Mr. Conway after this at the Cattlemen's Convention at Dallas, as well as a conversation with Mr. Woods and a conversation with Brooks, the witness above referred to as the live stock agent for the Gulf, Colorado & Santa Fe Railway Company, and adds: "I don't know what connection he has with the Atchison, Topeka & Santa Fe Railway Company; I don't know their inside workings—they all work together to a great extent." In this connection and at the same time, as we understand, Mr. Clegg testifies as follows: "Mr. Conway told me—I believe it was Mr. Conway, or Mr. Wood—Mr. Conway was spokesman at the time—that they could not get any reduction in the rate, and could not do any better, and I told him that all things considered we could not do any better by going over the Frisco and we would ship the cattle over the Santa Fe, and we were passing back and forth, and I am not absolutely sure whether this part of the conversation was started in Fort Worth with Mr. Brooks. Anyway, I asked Mr. Brooks what about the water up there—were they getting it to water the cattle in the pens? and he says: 'Mr. Clegg, it is my understanding they are going to have it.' I says: 'Mr. Brooks, I want to know to be sure—we would not go that way at all if there was not going to be water, and so we could feed them.' I said, and Mr. Conway said, there was, but I want to be absolutely sure. And Brooks says: 'Well, when are you going back to San Angelo?' When I told him, he says: 'Well, I will take it up with them and let you know for sure by the time you get to San Angelo.' 'I will notify the agent there and he will let you know.' And when I got to San Angelo, the agent told me when I got off the train that he had notice that they were going to have water at the pens at Red Rock, and there was a letter up at the hotel for me and I have the letter now. It was in a Gulf, Colorado & Santa Fe envelope headed, 'Water, Red Rock, Oklahoma Territory.' (Witness is handed a letter.) That is the letter that I got.'" The letter referred to is as follows: "Fort Worth, Texas, Mar. 23, 1906. Water—Red Rock, O. T. Mr. C. E. Hydes, Agent, San Angelo, Texas. Dear Sir: Will you please advise Mr. Clegg that I have just seen J. E. Wood, live stock agent of the Santa Fe at Wichita, Kansas, and he advises there will be water at Red Rock, Oklahoma, for watering cattle before they go to the dipping vat, and that it was his understanding that the opening through which oil will drain from draining pens will be slatted with wood to keep animals from drinking oil that drips from vat. (Signed) F. S. Brooks." F. S. Brooks testified as to his connection with the Gulf, Colorado & Santa Fe Railway Company as live stock agent in the early part of 1906 and identified the letter above set out as having been written by himself; also testified that he saw Woods shortly before the letter was written, and on the afternoon of the day the letter was written and before writing same had asked Woods if water would be furnished in the shipping pens in Red Rock, who answered that it

would be; that he wrote the letter subsequently to this conversation, though on the same day, to the agent at San Angelo with instructions to convey the information to Mr. Clegg. The record shows further that Conway denied the conversation at Ponca City in toto, and witness Woods denied that he was present or that he had ever heard of any such conversation or agreement. It further appears that in corroboration of his testimony and for the purpose of impeaching and breaking down the testimony of Conway, Clegg called a witness named Garland, who testified that he had had two conversations with Conway in which he had stated that there would be water in the pens so that the cattle could be watered before they were dipped. It must be evident from what we have said that all the parties well understood that the agreement alleged to have been made between Clegg and Conway would be carried out through the means of their employees. We think it must be clear, too, that it must have been known both to Clegg and Conway, that Woods, the live stock agent of the Atchison company, was acquainted with whatever agreement was in fact made and the record fairly raises the inference that Brooks had some information concerning these various matters. It is shown that the conversation between Clegg and Brooks occurred before the cattle were shipped and that the assurance that there would be plenty of water and that the agreement alleged to have been made would be lived up to, was renewed by Woods, who, under the circumstances detailed by Clegg, had authority to bind the Atchison company. The letter, shown to have been written after the conference with and by authority of Woods, agent for the Atchison company, shows that it was written in pursuance, in furtherance and in reference to a recognized obligation, and his testimony is strongly confirmatory of Clegg's contention and was receivable for this purpose, and should, untrammeled by any instructions, have been considered by the jury. It was a case where the actual promise and particular obligation rested in parol, a contract insisted and claimed by Clegg and denied by Conway, the existence of which, under the circumstances stated, was strongly confirmed by this correspondence and conversation and conferences leading up to it. Therefore to withdraw the letter and instruct the jury that it constituted no element of a contract, or was not within and of itself a contract, was to strike down and withdraw from the jury considerations and circumstances of the very highest importance, corroborative of and tending to sustain his contention. We are clear that the charge given was erroneous and that the effect of it must have been detrimental to the interest of Clegg. We hold therefore that the Court of Civil Appeals did not err on this ground in reversing the case as to the Atchison, Topeka & Santa Fe Railway Company. It is therefore ordered that the judgment of the Court of Civil Appeals be and the same is hereby affirmed.

*Affirmed.*