## Cincinnati, New Orleans & Texas Pacific Railway Company v. Nolan.

(Decided November 24, 1914.)

### Appeal from Lincoln Circuit Court.

1. Personal Injuries—X-Ray.—In a suit for personal injury where an X-ray examination is necessary to show the condition of the bones and the court for this reason ordered one to be made, the defendant should not be forced to trial where the examination had not been made without fault on its part.

2. Photographs.—A photograph of the human body should not be admitted in evidence without proof that it was fairly and correctly taken.

3. Evidence—Expert Testimony.—If any private part of the body of a male or female can not be examined in court without an improper exposure of the person, it may be examined out of court by experts appointed for that purpose by the court.

4. Railroads—Examination of Cars by Brakemen—Rule as to—Evidence.—A rule requiring brakemen to examine the cars and report at once to the conductor any defect that may be discovered on the journey, applies only to such things as may be discovered by such an examination as a brakeman may be expected to make and should not be admitted where the defect was due to the rottenness of a sill covered by the timbers of the car.

5.   Instructions—Master and Servant—Appliances.—In an instruction
     defining the duty of a master to a servant, the word "inspect"
     should not be used, and the instructions should submit to the jury
     whether the appliance was defective and the defendant knew it,
     or by ordinary care, could have known it.
6.   Master and Servant—Instructions.—Where the servant did not
     know of the defect and it was hidden and not obvious, any refer-
     ence to his knowledge may be omitted from the instruction.
7.   Damages—Measure of—Employers' Liability Act.—In actions un-
     der the Federal Employers' Liability Act, the measure of damages
     should be given as approved by the Supreme Court of the United
     States; also the rule as to the effect of contributory negligence.

JOHN GALVIN, J. W. ALCORN and K. S. ALCORN for appellant.

ROBERT HARDING, EMMET PURYEAR, J. W. RAWLINGS and
P. M. McROBERTS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

On May 14, 1913, Edward Nolan was head brakeman
on a train of the Cincinnati, New Orleans & Texas Pa-
cific Railway Company, which left Danville, Kentucky,
about 6 p. m. for Oakdale, Tennessee.    Stearns, Ken-
tucky, is a station 75 miles south of Danville.   The train
stopped at Stearns to take water, and it was the duty of
Nolan, when it so stopped, to inspect the train and see
that all was right.   As the train was pulling slowly up to
the water tank, and before it stopped, Nolan undertook
to descend from the top of one of the cars to the ground,
and as he did this, the handhold at the top of the car gave
way with him, and he was thrown to the ground.   A little
while after this he appeared at the station, apparently
suffering great pain, and was taken by another train back
to Somerset and put in the hospital there.    The physi-
cians in charge of the hospital could find no evidence of
a broken bone; his complaint indicated that some of the
bones where the leg joins the body might be broken, but
he declined to allow the physicians to put him under the
influence of an anaesthetic, and this was the only way in
which they could tell whether the bones were broken.
After staying at the hospital about a month, he was taken
home, and later brought this suit against the company,
charging, in substance, that in his fall the hip joint bones
were broken.   After the answer was filed, and on Novem-
ber 6, 1913, on motion of the defendant, the court entered
an order that the plaintiff, Edward Nolan, should go, on

November 8th, at about the hour 3:30 p. m., to the office of Dr. Lewis, in the city of Lexington, and then and there submit himself to an X-ray examination to be made by Dr. Lewis for the purpose of ascertaining whether or not one of his hip bones was broken, and what his injuries were, and that Dr. Lewis report, in writing, the result of the examination; an attorney of each of the parties being allowed to be present at the examination. It was provided in the order that Nolan should not submit himself to the examination, and that Dr. Lewis would not make it, if, in the opinion of the doctor, danger to Nolan was to be reasonably apprehended therefrom. The plaintiff excepted to the order and moved the court to set it aside. This the court refused to do. Nolan went to the physician's office about 5 o'clock on November 8th with his attorney, who stated to the physician that Nolan had been exposed to the X-ray four times within the past three weeks, and that they refused to allow him to make a picture unless he would be responsible for any trouble that might come from the use of the X-ray. As Nolan had been exposed several times, and the physician did not know how long the exposures had been, he was not willing to assume the responsibility, and no examination was made. When the case was called for trial on November 12th, the defendant filed an affidavit for continuance, setting up the facts we have stated, and asking that the trial be postponed in order that the X-ray examination might be made, as an X-ray examination would disclose the condition of the bone, and this could be shown in no other way. The affidavit also disclosed the fact that the two physicians who had examined Nolan were unable to discover any indication that a bone was broken. The court overruled the motion for continuance and forced the defendant to trial without an X-ray examination of the plaintiff. We are of the opinion that the motion should have prevailed on the facts stated, for the X-ray examination is the only certain means of discovering the condition of the bones. The alleged fracture and the permanent injury resulting from it, were the most important things in the action; the defendant contended that there was no fracture and the plaintiff had received really slight injuries. The order of November 6th was made after the previous X-ray examinations, which were unsuccessful. The court had refused to set aside the order, and the plaintiff should have allowed the physician to follow the terms of that order. Under the circum-

stances, the defendant should not be forced to trial until the X-ray examination has been made, unless it is shown that it cannot be made with safety to Nolan.

On the trial of the case, the plaintiff introduced in evidence certain photographs taken of his legs and hips and proved by his physician who had examined him that these photographs were a fair representation of their condition. The defendant objected to the introduction of the photographs in evidence, insisting that the plaintiff's person itself was the best evidence. There is some conflict in the authorities on the subject, but we approve the rule adopted in some jurisdictions that the nude body of the plaintiff should not be exhibited in court, and that photographs of it may be given in evidence; but in order that the photographs may be introduced, it must be shown that they were fairly and correctly taken. (Ligon v. Allen, 157 Ky., 110.). A person may go before a photographer and take such a position that the photograph would give a misleading view of the real condition. There was no proof here as to how the photographs were taken and no proof that they were fairly taken; without this they should not have been introduced in evidence. (Note State v. Matheson, 114 Am. St. Rep., 439; Baustian v. Young, 75 Am. St. R., 473.) If the condition of any private part of the body of a male or female is material on any trial and cannot be examined in court without an improper exposure of the person, it should, under an order of the court, be examined out of court by experts appointed for that purpose. (Guhl v. Whitcomb, 83 Am. St. R., 889.)

The defendant offered in evidence the following rule:

"Freight brakemen will before starting see that the hand brakes, brake rigging and air brake apparatus are in easy working condition and in good repair. They will also aid the conductor in making all required inspections and tests both at terminal stations and at convenient points on the road. They will also examine all couplings, draw-gear, brake-gear, running gear (including wheels, axles and journals), running boards, steps, hand holds, ladders, safety chains and irons, and report at once to the conductor any defect that may be discovered."

The court properly refused to allow the rule to be read in evidence. The hand hold was fastened to the car by a bolt which went through the sill of the car; the sill was decayed and for this reason the hand hold gave away, but the sill was concealed from view by the timbers of the

car, and such an inspection as a brakeman could make while on the journey would not reveal the trouble. The rule does not refer to such hidden defects as we have here. (Martin v. Wabash Railroad Co., 142 Fed., 652.)

The court by the first instruction told the jury that it was the duty of the defendant "to use ordinary care, to furnish, and inspect, and keep, and maintain" the hand hold reasonably safe; the word *inspect* should have been omitted from this instruction. We so held in a suit against a municipal corporation (see City of Louisville v. Soeller, 155 Ky., 192) and what we said on the subject of undue prominence in that case applies equally here. The usual instruction without the word inspect has been often approved. The defendant complains of the instruction on the ground that it assumes that the hand hold was defective and that the defendant knew it, or could by ordinary care have known it. As the case must be tried again, the court will so modify the instruction as to submit these facts to the jury. There was no proof that the plaintiff knew of the defect or that it was so obvious that by ordinary care, in the course of his employment, he should have known it. The court, therefore, did not err in refusing the instructions which the defendant asked on this subject. The real defense to the action was that the defect was hidden and not discoverable by ordinary care on the part of the defendant. There was sufficient evidence to take this question to the jury. The court did not err in refusing to instruct the jury peremptorily to find for the defendant.

The measure of damages given by the court in its instructions is not the same as that approved by the Supreme Court of the United States; and as this suit is brought under the United States statute, on another trial the instruction on the measure of damages and on contributory negligence should be given in the form approved by that court. (Nashville, &c., Railroad Co. v. Henry, 158 Ky., 88.)

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.