**TEXAS & N. O. RY. CO.   v.   TINER.**

No. 4994.

Court of Civil Appeals of Texas.

El Paso.

Oct. 21, 1953.

Rehearing Denied Nov. 25, 1953.

Kemp, Smith, Brown, Goggin & White, El Paso, Baker, Botts, Andrews & Parish, Houston, for appellant.

John J. Watts, Odessa, for appellee.

McGILL, Justice.

Appellee as plaintiff sued appellant as defendant to recover damages for the death of her husband, Troy D. Tiner, a railroad brakeman who was killed in a wreck of appellant's train which was derailed as it went around a sharp curve in Hudspeth County, Texas. Trial was to a jury, which in answer to special issues found both Troy D. Tiner, the deceased, and defendant, guilty of negligence proximately causing the accident, and fixed plaintiff's total damage at $50,000; they also found that her damages should be diminished $10,000 as a proximate result of deceased's own negligence. On these findings the court rendered judgment in favor of plaintiff against defendant for $40,000.

The findings of negligence on the part of defendant were: (1) just prior to the accident the engineer on defendant's train operated said train at a rate of speed in excess of thirty miles an hour; and (4) the engineer in charge of defendant's train failed to keep such lookout to ascertain the approach of the train to the restricted curve as a person of ordinary prudence would have kept under the same or similar circumstances. Findings of negligence and proximate cause followed each of these findings. The findings of negligence on the part of the deceased were: (6) just prior to the accident the deceased, Troy D. Tiner, failed to apply the airbrakes so as to slow the train down as it was approaching the curve in question; (11) the deceased failed to advise the engineer that defendant's train was approaching the curve in question at an excessive rate of speed; and (9) the failure of deceased just prior to the accident to stop the defendant's train prior to its entry into the curve was negligence. Appropriate findings of negligence and proximate cause followed these findings. However, the jury failed to find (14) that such negligence was the sole proximate cause of the accident. They found (15) total damages for plaintiff of $50,000; and (16) that such damages should be diminished $10,000 as a proximate result of deceased's own negligence.

Appellant's first, second and third points respectively are that the court erred in refusing to permit defendant to prove that plaintiff was employed and earning between $200 and $300 per month (1) before she married deceased; (2) during the time she was married to and living with the deceased; and (3) after the death of deceased and at the time of the trial.

■ The court did not err in refusing to admit any of this testimony. On direct examination plaintiff testified that the deceased made approximately $5,000 a year in the year preceding his death, and that he was devoted to her, and they had no quarrels

or bickerings; on cross-examination . she testified that he gave his checks to her. The evidence is uncontroverted that she was the wife of deceased at the time of his death, and that she had not remarried. We think Texas & Pacific Railway Co. v. Harrington, 62 Texas 597 is controlling on these points. There the court said:

"Upon the trial, Mrs. Harrington, as a witness in her own behalf, and over the several objections of appellant's counsel, was permitted to testify 'that she was very poor, that they had no means of support except the labor of her husband, and that she had no means of supporting or educating her children'. In explanation of the ruling the court said, 'the evidence was submitted as tending to show the expectation of plaintiff's pecuniary aid from deceased.'

"It was a legal obligation resting upon Harrington to support his wife, and to support and educate his children. The law imposed the duty, and no other presumption than compliance on his part would be indulged. This is not a suit for contributions which might or might not have continued if the party had lived, but a suit for compensation for the loss of husband and father, whose duty it was to furnish support, etc.

"That evidence was not admissible in this case, and was calculated to prejudice the rights of appellant. International & G. N. Ry. Co. v. Kindred, 58 Tex. 498 [57 Tex. 491]; Pennsylvania Ry. Co. v. Roy, 12 Otto 451, 26 L.Ed. 141; Texas & P. Ry. Co. v. Burns, supra."

and reversed and remanded the cause because of improper admission of this testimony. This case has been cited many times and so far as we know has never been overruled or its authority questioned. The case of Francis v. Atchison, T. & S. F. Ry.Co., 113 Tex. 202, 253 S.W. 819, 30 A.L.R. 114 is clearly distinguishable. There the suit was to recover damages on account of the death of an adult son who was under no legal duty

to contribute to the support of his father and mother. This distinction is recognized in the opinion, 253 S.W. loc. cit. 821, where the court said:

"The amount of recovery must be based upon the loss sustained. If it were possible to ascertain the actual or exact amount the son Porter Francis would have contributed to the support of his father and mother had he lived, the present worth of that amount, of course, would be the amount of recovery. That being impossible, in a case of this kind, the deceased being an adult, and the parents having no legal right or demand to the son's earnings or to contributions from him, the amount of loss sustained is to be ascertained from all the circumstances, relations, and conditions of the parties.

"In the first place, liability being established, the parent must show that he had a reasonable expectation of receiving aid and contributions from his son had he lived. But the facts and circumstances that bear upon the issue as to whether he had such a reasonable expectation, such as the son's ability and disposition to contribute and the father's need or lack of need of such assistance, would unavoidably have an important bearing upon what amount he had a reasonable expectation of receiving from the son had he lived. The average mind under its judgment and common sense cannot help but give weight to such testimony in arriving at a conclusion on both of these issues. The issues are inseparable, and are really one—the reasonable expectation of receiving aid and its probable amount." Galveston, H. & S. A. Ry. Co. v. Gormley, Tex.Civ.App., 35 S.W. 488, no writ history; and Fort Worth & D. C. Ry. Co. v. Stalcup, Tex.Civ. App., 167 S.W. 279, wr. ref.

on which appellant heavily relies are also distinguishable. In the Gormley case the widow's testimony went to show the earnings of the deceased and the extent of the family's dependence on his life, and not

the widow's earnings or financial condition. Of course such testimony is admissible. See Pennsylvania Co. v. Keane, 143 Ill. 172, 32 N.E. 260. Also, in the Stalcup case, the testimony which was held to have been properly admitted related to the financial condition of the deceased and his wife at the time of his death, and tended to show that the deceased was a good provider for his wife. It did not relate to the earnings of the wife or widow. The trial court relied on Dow v. Carnegie Illinois Steel Corporation, 3 Cir., 165 F.2d 777 as reflecting the view of Federal Courts on the admissibility of such testimony, he having concluded that the view of the Federal Courts was controlling in this case, since it was a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Neither party refers to this case in their brief, and while not conclusive on the precise point we think it does support the views of the Supreme Court in the Harrington case.

■ The fourth point urges that such testimony was admissible for the purpose of impeaching plaintiff. On redirect examination plaintiff was asked:

"Q. State whether or not since Troy Tiner died nearly two years ago, whether you have had a date with a man? A. I have never left home except to go to church and do just my shopping, and all. I have never had a date and I have never even considered it."

The answer cannot be fairly construed to mean that plaintiff had not worked or earned any money since her husband's death, hence the proffered testimony would not have tended to impeach her.

The fifth point assigns error in the submission of question No. 16 and instructions thereunder. The questions and instructions thereunder and answer thereto were:

"How much, if any, do you find from a preponderance of the evidence should the plaintiff's damages, if any, be diminished as a proximate result of the deceased's own negligence, if any? Answer in dollars and cents.

"In connection with this issue you are instructed if you have found in answer to preceding issues that the damages, if any, sustained by plaintiff were caused in part by the negligence, if any, of the defendant and in part by the negligence, if any, of the deceased, then you will find that sum which represents the proportion that the amount of negligence, if any, attributable to deceased bears to the total damages, if any, found in answer to the preceding question.

"We answer $10,000 (Ten Thousand Dollars)."

The complaint is that the question and instructions thereunder (a) inform the jury of the effect of its answers to the issues of negligence on the part of Troy D. Tiner, and on the part of defendant; (b) inform the jury of the effect of its answer to question No. 15 relating to damages; (c) inform the jury of the effect of its answer to question No. 16 itself; (d) inform the jury of the effect of its answer to question No. 14 relating to sole proximate cause; and because the question and instructions thereunder together and severally constitute a general charge.

■■ This cause was brought under the Federal Employers' Liability Act, 45 U.S.C.A. Sections 51–60 and therefore the provision relating to comparative negligence, Sec. 53, applies. This section provides:

"* * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee".

In Texas & Pacific Ry. Co. v. Mix, Tex.Civ. App., 193 S.W.2d 542, 548, this court in an opinion prepared by the late lamented Chief Justice Price, in disposing of similar com-

plaints to the submission of the following Special Issue:

"If you find from a preponderance of the evidence that the plaintiff's injury was caused by the negligence of both plaintiff and defendant's employees, concurring together, then say by how much the amount, if any, named by you in answer to the preceding question should be diminished by reason of plaintiff's negligence, if any, taken into consideration the extent to which the plaintiff's negligence, if any, contributed, if it did, to the total amount of the damages, if any."

wrote:

" * * * The very issue was as to the proportion appellee's negligence bore to that of appellant. It is difficult to form the issue in such a manner that some intimation or clue can not be deduced therefrom as to the legal effect of the answers as to negligence of the defendant and that of plaintiff. The form of the issue does not necessarily convey to the the jury information as to the legal effect of the answers to such issue, or of the legal effect of other answers to other issues."

Appellant insists that since the case was reversed on other grounds the last above quotation was unnecessary dicta. We think not, in view of the fact that this assignment was considered in view of another trial for guidance of the trial court. Appellant also insists that if the quoted language be an authoritative holding it is in direct conflict with the holding of this court in Texas & P. Ry. Co. v. Jefferson, Tex.Civ.App., 131 S.W.2d 175, which was not cited or referred to in the Mix case. We do not concede that there is an irreconcilable conflict. In the Jefferson case Special Issue No. 29 referred specifically to Special Issue No. 10, which assessed the plaintiff's damages at $10,000 and expressly told the jury that the amount they found in answer to Special Issue No. 29 should be (and of course would be) deducted from the amount they found in answer to Special Issue No. 10, if any. In the present case Question No. 16 did not specifically refer to Question No. 15 or any other question. The instruction substantially follows the language of the statute. If there be no valid distinction between the Jefferson and Mix cases we adhere to our holding in the Mix case, it being of a later date than the Jefferson case. We are not impressed with appellant's argument that by submitting the percentage of proportion of negligence proximately causing the accident attributable to plaintiff and defendant, the jury would not have been advised of the effect of its answers. We think the effect would have been just as obvious as in the form Special Issue No. 16 was submitted. In any event, defendant did not request the submission of any such issues and therefore is not in position to complain of the court's failure to submit them. There is respectable authority to the effect that since this was a case under the Federal Employers' Liability Act neither the Jefferson nor the Mix case is controlling, but the instruction on contributory negligence should be given in the form approved by the Supreme Court of the United States. Cincinnati, N. O. & T. P. Ry. Co. v. Nolan, 161 Ky. 205, 170 S.W. 650, loc.cit. 652(8). See also Keith v. Wheeling & L. E. Ry. Co., 6 Cir., 160 F.2d 654. The question and instructions thereunder did substantially comply with the form approved by that court. Norfolk & Western Ry. Co. v. Earnest, 229 U.S. 114-122, 33 S.Ct. 654, 57 L.Ed. 1096.

■■ The sixth point is that the court erred in refusing to grant defendant a mistrial after plaintiff's attorney asked John P. Longan, one of plaintiff's witnesses, if he were a witness at the hearing in which "they determined the responsibility of the engineer", since such question was prejudicial and inflammatory. The following from the Statement of Facts reflects what occurred. Mr. Longan had testified as an eyewitness to the train wreck involved in this lawsuit. On cross-examination by Mr. White, defendant's counsel, the following occurred:

"Q. And,—now you testified before the Interstate Commerce Commission examination in connection with this, didn't you? A. I did.

"Q. And you also testified at a formal hearing that the railroad company held on it, did you not? A. I believe I only testified twice in the case, one of them was the simultaneous hearing of the Interstate Commerce Commission and the Railroad and then I made a deposition here in this Court several weeks ago.

"Q. That last deposition was in January, wasn't it? A. Yes, sir."

"Mr. White: That's all." (S. F. p. 27)

Immediately thereafter, upon assuming redirect examination, plaintiff's attorney, Mr. John Watts, asked:

"Q. You weren't a witness in the hearing that they held, after they held their first hearing, in which they determined the responsibility of the engineer, is that right? A. No, sir, I wasn't at that hearing, or wasn't there." (S. F. pp. 27–28)

Appellant contends that the question was adroitly framed so as to leave the impression with the jury that defendant had determined that the engineer was responsible for the wreck in whole or in part, and that it necessarily had this effect, which was extremely prejudicial. However, appellant seems tacitly to concede that the prejudicial effect was not so great that it could not have been removed by appropriate instruction, which the court refused. It is true that the court did refuse to instruct the jury not to consider the question, but this was not called to the court's attention or complained of in defendant's motion for a new trial, and therefore cannot be considered here. Rule 324, Texas Rules of Civil Procedure. Therefore, we think the general rule stated by this court in Coleman v. Cook, Tex.Civ.App., 195 S.W.2d 1020, following Clegg v. Gulf, C. & S. F. R. Co., 104 Tex. 280, 137 S.W. 109, is applicable, and that the exceptions there referred to are not applicable. It may be questioned whether the necessary implication from the question is as contended by appellant. The phrase "Determined the responsibility of the engineer" is susceptible of a construction that defendant had determined whether or not the engineer was responsible. It seems to us that this is the most logical construction of the language employed. In view of the ample evidence in the record to support the jury's finding that the engineer negligently operated the train at a rate of speed in excess of thirty miles per hour, and that such negligence was a proximate cause of the accident —facts which were practically conceded by defendant, it does not affirmatively appear that defendant was prejudiced by the question.

We decline to consider appellee's counterpoint No. 7. For the first time she here asserts that the evidence does not raise the issue of contributory negligence on the part of Tiner in any of the respects found by the jury. She did not raise this point in any manner in the trial court. Of course appellee could by counterpoint show any valid reason why the judgment should be affirmed, though such counterpoint did not relate to any point raised by appellant and was not raised by appellee in the trial court; but by counterpoint No. 7 appellee in effect attempts to complain of a part of the judgment, since if this counterpoint were sustained the jury's answer to Special Issue No. 16 would have to be disregarded and plaintiff's damages would not be diminished as a proximate result of deceased's own negligence, therefore the express provision of Rule 324, R.C.P. "A motion for new trial shall not be necessary in behalf of appellee, except where he complains of the judgment or a part thereof", is applicable.

All of appellant's points are overruled and the judgment of the trial court is affirmed.

HAMILTON, C. J., does not participate in this case.