Lucille WELCH et al., Appellants,

v.

ADA OIL COMPANY, Appellee.

No. 6913.

Court of Civil Appeals of Texas.

Texarkana.

April 4, 1957.

Rehearing Denied May 16, 1957.

Combs, Brock, Forney & Mitchell, W. Arthur Combs, John L. Russell, Houston, for appellants.

Kemper & Kemper, Barrow, Bland, Junell & Rehmet, Houston, for appellee.

CHADICK, Chief Justice.

This is an intersection collision case in which Marvin Archie Welch was fatally injured. After a trial before a jury, on the answers to special issues finding Mr. Welch was contributorily negligent, the trial court denied plaintiffs a recovery and adjudged costs against them. The trial court judgment is affirmed. The parties to this suit will be referred to as they were in the trial court, as plaintiffs and defendant.

The collision occurred January 9, 1954, about 3:30 in the afternoon on a clear dry day at an intersection of Revielle and Moline streets in the city of Houston. These streets intersect at approximately right angles, Moline running east to west, and Revielle north to south. Revielle is a part of State Highway No. 35, and at the place of intersection as well as some distance north and south, it is divided by an esplanade. Traffic in the west lane flows toward the south and that in the east lane toward the north. Revielle is 80 feet in width overall, the esplanade 16 feet, and each traffic lane 32 feet. Moline is 26 feet in width as it enters into Revielle. If the south curbline of Moline is projected across the intersection, the north end of the esplanade would be several feet south of the projected line. There is a traffic control marker, "Stop" sign, at the entrance of Moline into the intersection, requiring traffic to stop before entering the intersection.

Plaintiffs present two points for reversal contending: (1) That issues of discovered peril should have been submitted; and (2) that the widow of the deceased was erroneously examined on matters concerning her financial and economic status. The defendants by their counterpoints say that (1) the facts in this record constitute no evidence raising the issue of discovered peril, and (2) if such issue had been submitted and answered favorably to the plaintiffs the answers would be against the great weight and overwhelming preponderance of the evidence, and (3) countered plaintiffs' points.

■ Considering first the discovered peril issue, under the points and counterpoints we must interpret the evidence in a manner most favorable to the plaintiffs and disregard all evidence and inferences favorable to the defendants. See Ford v. Panhandle & Santa Fe R. Co., 151 Tex. 538, 252 S.W.2d 561, and Creech v. Thompson, Tex., 297 S.W.2d 817.

The plaintiffs called the truck driver as a witness under the adverse party rule.

The driver had not been employed by the defendant since the day following the accident. (It should be added that employment was not terminated as a result of the collision, but simply because he was an extra driver and found employment elsewhere). For the purpose of this opinion, and the disposition made of the case, it is not necessary to determine whether the truck driver was an adverse witness. As previously mentioned, the testimony is interpreted in the light most favorable to the appellant and therefore the unfavorable testimony will be discarded.

Defendant's tank truck which was loaded with 5,840 gallons of diesel fuel was proceeding in a northerly direction on Revielle street when the decedent Welch entered the Moline intersection in his 1951 two-door Buick automobile. Defendant's truck driver testified that Mr. Welch stopped at the control marker on Moline before entering the intersection, then pulled across the west lane of Revielle to a point even with the north end of the esplanade and stopped.

This truck driver fixed his speed at 30 miles per hour just prior to the collision, and said that he was coasting because the traffic light, a block to the north of the Moline intersection, would change before he could get to it. He placed his own position about 25 feet south of the north end of the esplanade at the time the Welch Buick started into the intersection and said it came to a standstill at the end of the esplanade and so remained about three seconds, and that the Buick traveled about 10 miles per hour until it came to this halt, then started up suddenly and pulled in front of his truck, requiring a second or split-second to make such move, and that he jammed on his brakes at the instant this occurred.

The truck driver's testimony regarding his realization of the dangerous or perilous position of Mr. Welch is this:

On cross-examination:

"Q. Mr. Bennett, when you first saw the Buick stop over here and start

across, did you realize, or didn't you think that he was going to have to stop at the intersection, and when you saw him start up again didn't you think he was going to cross ahead of you? A. No, sir.

"Q. You realized that * * * if he didn't stop again that he would have been in danger of being struck by your vehicle, is that right? A. Yes."

And on direct examination:

"Q. Mr. Bennett, just before the driver of the Buick automobile started up, or began his forward movement from the stopped position out in the center of the esplanade, did you look at the driver of that automobile? A. Yes.

"Q. Could you see what he was doing, or where he was looking, or anything like that? A. He was looking in my direction.

"Q. And that was while he was still in the stopped position? A. Yes, he was in the stopped position and at the time he moved.

"Q. What, if anything, did you assume that he was going to do? A. I just assumed that he was just going to try to beat me across the street."

A witness who was driving an automobile slightly behind and to the right of the Oil Company's truck testified that Welch's Buick stopped at the intersection, then proceeded into the intersection and continued to move at all times after it entered the intersection until struck by the truck, but this witness further testified that his view was blocked by the truck for a brief period and the Buick was not within his sight all the time after it entered the intersection.

■ Two traffic investigation officers testified. One said that he found certain tire tracks made by an acceleration burn, as distinguished from a deceleration burn, that lined up with and ended near the point of collision. Each of these officers refused to give the opinion that the Buick had made the track. These officers fixed the collision point 12 feet east of the east curb of the esplanade and three feet south of a projection of the south curbline of Moline. The plaintiffs offered a plat made by the investigating officers which had a notation on it that the Welch Buick stopped at the north end of the esplanade, then pulled in front of the truck. The officers explained that the notation was merely their opinion. Of course it is hearsay, and although it was offered by the plaintiffs, it may be disregarded under the "interpretation of evidence in its most favorable light" rule previously mentioned. In any event, this evidence does not conclusively bind plaintiffs and is subject to explanation or rebuttal by weightier evidence. 17 Tex.Jur., p. 575, Sec. 239.

A picture of the damaged car shows the impact to have ranged from about 12 inches forward of the door toward the rear, bending the rear bumper with the main force apparently taking effect just forward of the rear right wheel. Application of the truck brakes would stop it in 60 to 80 feet.

Upon certain of these facts the plaintiffs have worked out the dynamics of the case in an effort to show that they raised the issue of discovered peril. Considering speed, distance and time, as testified to by the truck driver, the plaintiffs reached the conclusion that the truck was actually 297 feet south of the collision point, as opposed to the truck driver's estimate of 25 to 40 feet, at the time the Welch Buick entered the intersection if the Buick paused three seconds at the end of the esplanade, or was 165 feet if it did not, and plaintiffs' distances are adopted as being correct.

Viewing the testimony in its most favorable light, and using the facts most favorable to the plaintiffs, it may be assumed that (1) the Welch Buick did stop at the north end of the esplanade, or disregard that part of the truck driver's testimony, and assume that (2) the Buick did not stop but pro-

ceeded without pause from the Moline intersection entrance to the point of collision. If either assumption would require the issue of discovered peril to be submitted, then this case must be reversed.

■ Every person entering a street traveled by automobiles and trucks is in some danger and adult persons of ordinary intelligence realize the general hazard to all. A person in the traveled street seeing cross-traffic or vehicles ahead in his own traffic lane knows that a collision and possible injury will occur if the courses of the vehicles are not changed, or traffic controls and devices are not heeded or if vehicles' drivers do not act in the interest of their own and others' safety. Each driver in a busy street may assume that this knowledge is possessed by his fellow drivers and that each will take necessary precautions to avoid a collision. The street hazard or peril is a common or general one and the discovered peril doctrine has no application. Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967; 4 Brachfield's Encyclopedia of Automobile Law, p. 393, Sec. 2803.

■ In this case, Mr. Welch was not in a position of peril within the contemplation of the doctrine until he reached a point where he became exposed to imminent collision with the truck of the defendant. The Supreme Court of Texas in Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112, 115, summed up the elements of discovered peril in the following language:

■ "The doctrine of discovered peril involves three elements, viz.: (1) The exposed condition brought about by the negligence of the plaintiff; (2) the actual discovery by defendants' agents of his perilous situation in time to have averted—by the use of all the means at their command, commensurate with their own safety—injury to him; and (3) the failure thereafter to use such means."

■ The truck driver saw the Buick enter the intersection and had a right to assume the Buick driver could and would stop, as he did, in this first hypothesis.

■ While Mr. Welch's Buick was moving from the entrance of the intersection to a haven of safety at the north end of the esplanade, there was no peril to Mr. Welch for the truck driver to discover. Consequently, the peril to be discovered arose after the Welch Buick started across the east lane in front of the truck. The driver's testimony is, to quote again: "Yes, he was in the stopped position and at the time he moved * * * I just assumed that he was just going to try to beat me across the street." This is the only direct testimony of the truck driver that could be construed as his realization of Mr. Welch's peril. This realization did not occur until a second or split-second before the fatal collision. Viewing the testimony in its most favorable light, the driver's testimony might be rejected. However, if it be rejected, there would be no testimony that the driver realized or appreciated Mr. Welch's perilous position. See Missouri-Kansas-Texas Ry. Co. v. Ferrin, Tex., 291 S.W.2d 931. And unless inferences from the other facts in the case show that the truck driver did or should have discovered Mr. Welch's perilous position, there is nothing sufficient upon which to base a finding of such fact. In this connection, and without repeating the facts, all of any materiality having previously been stated, there is nothing from which an inference might be drawn that the truck driver knew or should have known of Welch's perilous position before the time he testified he discovered it.

Using the plaintiffs' time and distance computations, the truck driver was 297 feet from the point of collision at the time of first observing the Buick entering the intersection. The Buick at 10 miles per hour or 14 feet per second consumed 3⅐ seconds reaching the safety of the esplanade; in that 3⅐ seconds the truck at 30 miles per hour or 44 feet per second moved 130

feet closer to the fatal collision. While the Buick was at a standstill three seconds, the truck approached another 132 feet in that time, a total of 262 feet since first sighting the Buick, and thus to within 35 feet of the collision point. The truck driver, therefore, had 35/44 of one second in which to realize that Welch was going to pull into the east lane and that a collision would result, and to formulate measures to avoid it with safety to himself and his truck.

It is in this record unquestioned that normal reaction time is 3/4 of one second. Reaction time as thus used refers to the time consumed in the physical act of moving the feet to the brake or turning the steering wheel after the mind wills that such action be taken. Allowing for the reaction time, the truck driver had less than 1/6 of a second in which to consider what action to take to avoid a collision. From these computations it is apparent that after discovering Mr. Welch's position of peril and that Mr. Welch either would not or could not extricate himself, the driver did not have sufficient time to consider measures to avoid a collision or put them into effect with safety to himself considering his heavily loaded tank truck. Under these circumstances the evidence is not sufficient to raise the issue of discovered peril. In Schumacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880, 882, it is said:

"The doctrine of discovered peril or last clear chance means certainly that the last clear chance must be a clear one. * * * It implies thought, appreciation, mental direction, and lapse of sufficient time to act effectually upon the impulse to save another from injury. * * *

"As has been so frequently said, this doctrine is a humanitarian one, and evidence convicting a person of the rather grave fault of neglecting to act to avoid injuring another whom he has discovered in a position of peril must not be imputed or presumed. Parks v. Airline Motor Coaches, supra. If the doctrine were raised where the events were so instantaneous and the actions of the parties so clearly impulsive and instinctive as they were here, it would be present in practically every situation where motor vehicles collide. Terry v. English, supra [130 Tex. 632, 112 S.W.2d 446]. The doctrine must certainly not be allowed to extend that far."

Next to be considered is the second assumption: That the Welch Buick did not stop after entering the intersection but continued forward to the collision point. Plaintiffs did not refer to this hypothesis in their supplemental brief and perhaps meant to abandon it. Regardless of that, however, applying the same factors of time, speed and distance, and omitting the three-seconds pause at the esplanade, the same result is attained and conclusion reached as under the first hypothesis. This opinion will not be extended to demonstrate. Plaintiffs' first point is overruled.

When the plaintiff Mrs. Lucille Welch was a witness, over the objection of the plaintiffs, the defendant was permitted to cross-examine her concerning earnings derived from her employment as a schoolteacher, and her social security entitlements. The opinion will not be prolonged by a discussion of the evidence, but under the facts of this case such cross-examination was error under the authority of Texas & P. Ry. Co. v. Harrington, 62 Tex. 597; Texas & N. O. Ry. Co. v. Tiner, Tex.Civ.App., 262 S.W.2d 769. However, such error does not require reversal under Rule 503, Vernon's Ann.Texas Rules of Civil Procedure, the reversible error rule. The jury answered the damage issues and awarded a total of $160,000 damages, of which $96,000 was apportioned to plaintiff Lucille Welch. In the argument to the jury, plaintiffs' counsel had contended for total damages of $171,252 though the suit

was brought for $250,000. These answers remove any reasonable doubt that the jury was influenced by the plaintiff Lucille Welch's testimony regarding her employment and economic status. Nor does it appear reasonable under any theory that such testimony entered into or influenced the answers of the jury to the contributory negligence issues. This point will be overruled.

For the reasons heretofore stated, no error shown requires the reversal of the judgment; therefore, the judgment of the trial court is affirmed.