**THURMOND et al. v. PEPPER et al.**

No. 10610.

Court of Civil Appeals of Texas. Galveston.

June 16, 1938.

Rehearing Denied July 21, 1938.

McFarlane & Dillard and Willett Wilson, all of Houston, for appellants.

Wood & Morrow and Newton Gresham, all of Houston, for appellees.

CODY, Justice.

This is a death injury action which arose in connection with a collision between motor trucks which occurred on the highway in Victoria County, on July 5, 1933, between Inez and Victoria. Principal reliance for recovery of damages is based on the doctrine of discovered peril.

Plaintiffs, who were the deceased's father, and his wife (who sued for herself and also as next friend of the children of herself and deceased), instituted this suit in the district court of Harris County. At the conclusion of plaintiffs' evidence, in response to defendants' motion, the court instructed the jury to return a verdict in favor of defendants; and Mrs. Thurmond appeals on behalf of herself and children.

The deceased, who lived in Inez, took a load of ice on his Chevrolet truck into Victoria, around 7 P. M. the evening of the accident, and began the return trip to Inez.

The other material facts and circumstances given in evidence, as testified to by appellees Pepper and Gladden without contradiction by any other witness, are these:

On the afternoon of the same day appellees Pepper and Gladden left Houston at about 3:30 P. M., driving two trucks with trailer attachments, each weighing approximately 5000 pounds, and each being loaded with oil field drill pipe, weighing around 6000 pounds, and proceeded to Santiago. Pepper drove the lead truck, and Gladden the rear truck. Somewhere around 8:30 that evening they passed Inez. And it was from a third to a half mile on the other side of Inez that the collision with the deceased occurred. There was no one in the truck with deceased, and he never regained consciousness. According to the evidence of the driver of the lead truck, Pepper, he first saw the deceased's truck approaching him on the north side of the highway, at a distance of between two and three hundred yards, which was on Pepper's right-hand, and deceased's left-hand side of the road— the highway at this point runs east and west. Pepper thought that deceased must be blinded by the lights of his, Pepper's truck, so he gave him his dimmers, and sounded his horn. The deceased's truck then responded by getting over on the south side of the highway, and was over on the south side when approximately a hundred feet away; but when from 50 to 75 feet distant from Pepper, he began encroaching on Pepper's side of the highway, and Pepper then saw, by his lights shining on deceased, that deceased was slumped over his steering wheel. Pepper then sounded his horn, and leaned out of his cab, and yelled. Deceased's truck was then traveling, according to Pepper's best judgment, between 30 to 35 miles an hour, and his own between 20 to 25 an hour. Pepper had four-wheel brakes on his six-wheel truck and trailer, and could have stopped within 20 feet. He realized that if he continued in the course he was going, he would have had a head-on collision, and that, if he stopped, the impact with deceased's oncoming truck might probably drive his, Pepper's load of pipe through the rear of his cab and impale him. So he turned off the highway toward the ditch on his right, i. e., the north. Deceased's and Pepper's truck sideswiped in passing. At the time, the right half of Pepper's truck was off the highway. Deceased's truck did not begin to weave in the highway until after sideswiping with Pepper's

truck. Following the sideswiping, Pepper turned his truck back into the highway, and then ran it into the ditch and stopped, in order to report to the authorities. Deceased's lights were not blinding, but were fairly bright.

Gladden, the driver of the rear truck, was from a hundred and fifty to two hundred feet behind the Pepper truck, and had been so all the way from Houston. He had observed what had happened, and saw sparks fly when the deceased's and Pepper's trucks sideswiped. When Gladden saw that Pepper and deceased were going to collide, he began to slow down. He had four-wheel brakes, and was going between 20 to 25 miles an hour and could have stopped within 20 feet. After deceased's and Pepper's trucks sideswiped, deceased seemed to have no further control over his truck, and it came weaving down the road toward Gladden. Gladden could not tell which way it was going. He did not stop right where he was because he thought by doing so he might have a head-on collision, and his load of pipe might be driven into the back end of his own cab and kill him, and kill deceased. He turned his truck out of the highway toward the ditch on his right-hand side. When deceased's truck was a little more than 20 feet from him, Gladden set his brakes, and leaped from his cab on the left-hand or driver's side of his truck. He hit the pavement rolling. He did not know how he managed to avoid the deceased's truck, which struck his own truck about its driving wheel. The impact made his truck head back in toward the pavement. Only the rear left wheel of the trailer of his truck was left on the pavement at the time deceased's truck hit his truck. His truck ignited and burned. Deceased still lived when he was rescued, and was carried to a hospital in Victoria, where he died without regaining consciousness. After the collision, deceased's truck was crossways on the highway, with its rear end across the black line that divides the highway in two, the rest of it on the north (deceased's left-hand) side of the road, with its front wheels demolished; its motor completely wrecked, and which fell out when an attempt was made to remove the truck.

There was evidence that a black mark was noticed on the pavement that ended under deceased's truck, and that began on the south side of the road, but it was not traced out. There was also testimony that the pipe-laden trucks were observed to be going at about 50 miles an hour at about a half or a third of a mile before they got to the point of collision. Inez is less than 105 miles from Houston. The drivers, according to their testimony, did not stop after leaving Houston until the accident.

Appellant, deceased's wife, predicates her appeal on three propositions. Her first proposition is this:

"The court erred in withdrawing said case from the jury and rendering judgment in favor of appellees because there was abundant evidence offered upon the trial of the case raising, demanding and requesting the submission to the jury of an issue as to whether the appellee truck driver Frank Gladden discovered the perilous situation to the deceased in time to have averted, by the use of all the means at his command commensurate with his own safety, injury to him and failed to use such means, in that there was evidence showing and tending to show:

"(1) That appellee, Frank Gladden, discovered B. A. Thurmond's first perilous situation more than 150 feet before his truck and that one driven by B. A. Thurmond collided.

"(2) That said appellee from his own testimony saw and realized that there was something wrong with the oncoming B. A. Thurmond truck before the collision with his truck.

"(3) That appellee, Gladden, discovered this perilous situation of B. A. Thurmond in time to have avoided the collision.

"(4) Appellee's own testimony admitted that at the speed at which he was traveling he could have stopped before the collision.

"(5) That appellee Gladden could have avoided the accident by the use of the means at his command, but didn't.

"(6) That appellee's own safety would not have been endangered had he stopped his truck when he first realized the perilous position B. A. Thurmond was in either by stopping on the pavement or by driving off the pavement and stopping his truck and getting out of it.

"(7) That appellee, Gladden, failed to use such means at his command to avoid the collision between his truck and the Thurmond truck.

"(8) That appellee, Gladden, did not leave the pavement until the truck driven by him and the truck driven by B. A. Thurmond were almost abreast of each other

with the B. A. Thurmond truck bearing into him or headed towards him all the time so that when the two trucks did reach a position abreast of each other the front of the Thurmond truck according to appellee Gladden's testimony ran into the left rear wheels or driving wheels of his truck."

Her second proposition was similar to her first, except that appellee Pepper was named therein, instead of appellee Gladden.

Her third proposition is this:

"The court erred in withdrawing this case from the jury and rendering a judgment in favor of appellees because there was abundant evidence offered upon trial of the case raising, demanding and requesting the submission of the case to the jury on the issue as to whether or not the appellees, severally or collectively, were guilty of negligence as a matter of fact in that there was evidence showing and tending to show:

"(1) That appellees severally and collectively were operating their respective trucks on the highway in a manner endangering the life and limb and property of persons upon the highway at the time and place of the collision in question.

"(2) That there was a well defined mark upon the pavement indicating the course taken by the Thurmond truck after its collision with the truck driven by the appellee Pepper, which course of the Thurmond truck upon the highway should have caused and did cause appellee Gladden to be concerned about the possibility of a collision."

 It is well settled that, if, discarding all adverse evidence and giving credit to all evidence favorable to the appellants * * * and indulging every legitimate conclusion favorable to appellants which might have been drawn from the facts proved, a jury might have found in favor of appellant on discovered peril, such issues should have been submitted to the jury." Stinnett v. Gulf C. & S. F. R. Co., Tex.Civ. App., 38 S.W.2d 615, 617, and authorities there cited. An application of this rule to the facts in evidence in this case does not lead us to the conclusion that the trial court erred in failing to submit an issue on discovered peril, either in respect to Pepper or Gladden. No contention is made that Pepper, for instance, did not do what seemed to him, after he discovered deceased's peril, was best calculated to avoid a collision. Appellant contends, however, that his duty must be measured by the standards of what a reasonably prudent person would have

done under the same or similar circumstances. Measured by this standard, appellant contends that Pepper's act in leaning out of his cab and shouting at deceased as a means of providing for his safety cannot be justified. But it seems to us that appellant fails to take into account the fact that Pepper did not discover deceased's condition of helplessness until he was from 75 to 50 feet distant and when deceased's truck veered back on to Pepper's side of the road and his discovery of deceased's perilous position was likewise his discovery of his own perilous position. If Pepper discovered that deceased was in danger of serious injury because of the suddenly discovered threatening collision, he likewise discovered himself in danger of serious injury from the same cause. And self-preservation is the first law of nature. What a man does in a good faith effort to defend himself from receiving serious injury he can justify by his good faith. The evidence shows that Pepper did all he knew how to do to avoid a collision, and was so far successful as to get off with the trucks sideswiping. And from the nature of the danger he was confronted with, and under the facts of this case, his efforts to extricate himself from the dangers attendant upon a collision were also efforts to extricate deceased from such dangers. He cannot be held to have been under a higher duty to preserve deceased from injury than to preserve himself. And while it is true that leaning out of his cab and yelling a warning may have been futile, there is no evidence that he did this at the cost of doing something wiser. For the evidence discloses that within the 75 to 50 feet that separated the two trucks at the time deceased's truck went into a perilous position, he succeeded in getting his truck half off the pavement. Appellants failed to make out an issue to go to the jury against Pepper, as a matter of law. While the proof shows that Pepper could have stopped his truck within 20 feet after he discovered deceased's peril, it is a matter of pure speculation as to whether, in so doing, his truck would have been rammed and himself killed. He was himself placed in a position of peril through no fault of his own, and had the right to win his way out of it as best he might, and to hope that his delivery therefrom would also save deceased.

 What has been said in regard to Pepper with respect to his duty to the deceased, after discovering his peril, likewise applies to Gladden. The facts adduced in

evidence have been set out above, and need not be repeated. After carefully considering them, we are of the opinion that appellants, as a matter of law, failed to make proof of any facts which, under the rule quoted above from the Stinnett Case, relieved the court, on this phase of the case, from the duty of instructing the jury in Gladden's favor.

In passing on appellants' third proposition in connection with the trial court's action in taking the case from the jury, we assume as correct the estimate that Pepper and Gladden were driving at the rate of 50 miles an hour at a distance of from a third to a half a mile from the place of the accident. From this evidence it could have been legitimately inferred that this rate of speed was kept up until the place of the accident was reached. But what then? Can the further inference be indulged that such inferred negligent rate of speed at the time of the accident was the proximate cause of the collision? We have carefully considered the evidence, and have concluded that a verdict by the jury convicting the appellees of any negligence charged against them as the proximate cause of the accident would have been pure speculation. While we have carefully examined appellants' speculations on the black line on the pavement ending under deceased's car, we do not think they will bear discussion.

The court did not err, and its judgment should be affirmed, and it is so ordered.

Affirmed.

PLEASANTS, C. J., absent.

On Motion for Rehearing.

CODY, Justice.

We have carefully considered appellants' motion for rehearing.

On submission their principal contention was that, regardless of the original cause of deceased's perilous situation, there was sufficient evidence to go to the jury that both appellee Pepper and appellee Gladden discovered his peril in time to have avoided injury to him by the exercise of ordinary care, in the use of the means at hand, consistent with their own safety. So our original opinion dealt largely with that contention. We do not understand that appellants seriously contended that there was any evidence to raise the issue of primary negligence on the part of appellees. And on the issue of discovered peril a plaintiff must establish not merely that the defendant ought to have known or discovered the peril, but that he actually perceived it. Texas & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410. Whether appellee-drivers ought to have discovered deceased's perilous situation would have been pertinent only on an issue of primary negligence. In practically every case of injury the danger of its happening is discovered before it actually happens. The crucial issue in cases where it is claimed that the principle of discovered peril is involved is the time when the peril was discovered. In order for appellants to have raised the issue of discovered peril as against appellees they would have had to show that Pepper and Gladden had no reason to believe that deceased could or would free himself from the impending injury. Horwitz v. Jefferson County Traction Co., Tex.Civ.App., 188 S.W. 26, at page 29, writ denied. There was no evidence to show that Pepper could have had reason to believe that deceased could not free himself from danger of a collision until his (deceased's) truck began to turn in on Pepper's side of the road, when the trucks were from 75 to 50 feet apart.

Appellants take grave exception to that portion of our former opinion in which it is stated that self-preservation is the first law of nature, and that what a man does to defend himself from serious injury is justified by his good faith, and that Pepper did all he knew how to do to avoid a collision. We were trying to show that in our opinion the collision was unavoidable from and after the instant Pepper discovered deceased's peril and that he would not likely free himself from it. In doing this we merely called attention to the fact that the powerful motive of self-preservation operated on Pepper to do all in his power to avoid a collision which threatened as grave injury to himself as it did to deceased. Appellants had cited cases in none of which, as we remember, the motive of self-preservation was present and operating on the defendant (or agent of defendant) to insure that he would do all in his power to deliver the plaintiff from threatened danger, because to do so would be to escape it himself. Through no fault of his own, Pepper was placed in sudden peril. We doubt very much if the law imposed upon him the obligation to act with that degree of care and prudence which it imposes on a person not subjected to sudden peril. Graham v. Hines, Tex.Civ.App., 240 S.W. 1015, writ refused. But we concluded

that, as a matter of law, there was no evidence to raise the issue that Pepper failed to exercise that degree of care which a person of ordinary prudence would have exercised under the same or similar circumstances. What has been said implies also with reference to the collision of Gladden with deceased.

Motion overruled.

PLEASANTS, C. J., absent.