William C. ARNOLD, Appellant,

v.

L. L. BUSBY et al., Appellees.

No. 6631.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 28, 1957.

Rehearing Denied Feb. 25, 1957.

**628**

Carr & Clark, Lubbock, Sanders, Scott, Saunders & Smith, Amarillo, for appellant.

Crenshaw, Dupree & Milam, Lubbock, Max Addison, Lubbock, of counsel, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment rendered upon a jury verdict awarding damages solely upon findings in support of the doctrine of discovered peril as a result of injuries sustained by reason of a collision between an automobile and a Farmall tractor at a street intersection in Lubbock, Texas, about 8:05 A.M. o'clock on July 15, 1954. The thoroughfares running north and south through the main business part of the city of Lubbock are designated as avenues by letters of the alphabet beginning with Avenue A in the east part of town and extending west block by block to College Avenue in the west part of town. The east-west thoroughfares are designated by serial numbers beginning with 1st Street in the north part of town and extending south block by block to about the 60th street. The collision in question occurred at the intersection of 54th Street with Avenue H, which is a paved, 3-lane thoroughfare caring for a portion of the north-south highway traffic through the city. Each of the outside lanes of Avenue H is 11 feet wide, the center lane is 12 feet wide and it is 20 feet from the pavement on each side to the curb line. Fifty-Fourth Street was in the process of being paved under contract at the time of the collision but all of the construction work thereon was then being done immediately east of Avenue H for a distance of three or four blocks and the said street was 42 feet wide east of Avenue H but was narrower than 42 feet and unpaved west of Avenue H. Kerr and Middleton Construction Company had the contract to do the construction work on 54th Street. Appellee, L. L. Busby, and witness, Douglas M. Ballew, were employees of Kerr and Middleton Construction Company and were both engaged in doing the construction work on the occasion in question. Ballew was operating a road grader spreading caliche and Busby was operating a Farmall tractor pulling a heavy roller or packer to pack down the caliche for a paving base after the caliche had been spread and watered down. Just prior to the collision, Ballew had operated the road grader proceeding west on 54th Street spreading caliche up to Avenue H and had continued west through the intersection crossing Avenue H, where he turned his grader around, parked it on 54th Street about 12 feet west of Avenue H, and was sitting on his grader waiting for Busby to pull the packer through the construction area and turn around, after which they would both proceed east for further construction work. While Ballew waited, Busby was proceeding west on 54th Street headed toward Avenue H, operating his tractor pulling the packer. After he had reached the end of the construction project at the east curb of Avenue H, he was proceeding west through the intersection of 54th Street with Avenue H but suddenly made a U-turn with his tractor in the street intersection and headed back east when, at the same time, appellant, William C. Arnold, approached from a northerly direction traveling south on Avenue H in a 1951 Chevrolet automobile and a collision occurred in the street intersection between appellee's Farmall tractor and appellant's automobile, which resulted in serious injury to appellee, Busby, and damages to both motor vehicles.

By reason of his injuries received, appellee, L. L. Busby, sued appellant, William C. Arnold, for personal damages in the total sum of more than $80,000. Appellant countered with a cross-action for damages against appellee and Kerr and Middleton Construction Company, which company he impleaded as a defendant. New Amsterdam Casualty Company intervened as a Workmen's Compensation carrier for recovery for such sums at it had paid for the benefit of appellee, Busby, in case he should recover against appellant, Arnold. The case was tried to a jury and judgment

was rendered for appellee, Busby, in the sum of $25,000, out of which sum $15,969.04 was awarded to intervenor, New Amsterdam Casualty Company, all having been so awarded and rendered as a result of jury findings to issues submitted on the doctrine of discovered peril. Appellant was denied any recovery on his cross-action as against appellee, Busby, and defendant, Kerr and Middleton Construction Company, by reason of the jury verdict. Appellant perfected his appeal and has presented 18 points of error.

The jury found that at the time and place in question both appellant and appellee were guilty of negligence which was a proximate cause of the collision. Appellant was convicted of negligence in effect in failing to apply his brakes in time to avoid a collision, in failing to keep his automobile under proper control and in operating his automobile at a greater rate of speed than was reasonable and prudent under the existing conditions and that such acts or omissions were each a proximate cause of the collision. The jury further found that appellant did not fail to keep a proper lookout and that his act in turning his automobile to his left immediately before the collision was not negligence. Appellee was convicted of negligence in effect in his failure to keep a proper lookout such as a person of ordinary prudence would have kept and by turning his tractor from a direct course headed west to the opposite direction headed east in the street intersection at a time when such movement could not be made with safety and that such acts or omissions were each a proximate cause of the collision. The jury further found that the failure of Kerr and Middleton to keep a flagman at the street intersection to warn approaching traffic of the operations of machinery was negligence, which negligence was a proximate cause of the collision but that such was not the sole proximate cause. The jury likewise found that the collision was not the result of an unavoidable accident. The jury also found in effect that appellee was in a position of peril immediately before the collision, that appellant discovered and realized that appellee was in such position of peril in time to have avoided the collision if he had exercised ordinary care in the use of all the means at his command, consistent with the safety of himself and his automobile, but that appellant failed to so act to avoid the collision, which failure was negligence that was a proximate cause of the collision. The trial court based its judgment for recovery of damages upon the doctrine of discovered peril as a result of the jury findings last herein mentioned.

In his 1st, 7th and 8th points, appellant contends in effect that there was no evidence to support the jury findings on the essential elements of discovered peril, that, in any event, the evidence was insufficient to support the jury findings on discovered peril, and that certainly the findings of the jury as to discovered peril were against the overwhelming weight and preponderance of the evidence. In his 5th point, appellant contends in effect that there is no evidence to support the jury findings to the effect that appellant discovered and realized appellee's position of peril in time to avoid the collision by the use of all the means at his command consistent with his own safety.

In the case of Sisti v. Thompson, 149 Tex. 189, 229 S.W.2d 610, 615, the Supreme Court has announced the well-known rules for recovery under the doctrine of discovered peril, which reveals and holds that in order for a person situated as appellee, Busby, was situated in the case at bar, to recover under the law of discovered peril:

"* * * 'he must show by a preponderance of the evidence: (1) that he was in a perilous position; (2) that the operatives [appellant] had discovered his perilous position; (3) that the operatives had discovered it in time to have prevented the injury, with the means at hand, with safety to the passengers in the car; and the car as well; (4) the operatives, after dis-

covering his peril, had no reason to believe that he could or would free himself from the impending injury'."

In the case of Schumacher v. Missouri Pac. Transp. Co., Tex.Civ.App., 116 S.W.2d 1136, 1139, the court followed the doctrine announced in the last case previously cited and further announced the familiar rule of law to the effect that such doctrine:

" * * * 'cannot be grounded upon pyramided presumptions, and the burden of proving that the injury could have been avoided by the party who inflicted it after the peril was discovered, or could have been discovered, rests upon him who asserts that proposition.' "

Photographs and drawings made by the witnesses were introduced in evidence revealing the kind of machinery used by appellee and other road workmen at the time and place of the collision, the condition of the said machinery and the automobile of appellant after the collision, and the general topography of the land and other characteristics as they existed at the street intersection in question at the time of the collision. The record reveals that the Farmall tractor being used by appellee was 11 feet long and that the roller or packer was being pulled by the tractor by its tongue being hitched to the tractor and both the tractor and tongue together were 14 feet long, making the total length of the said machinery 25 feet; that the packer was composed of a truck bed with a depth of apparently 4 feet, built on heavy wheels or rollers to give it weight. In order to give it more weight, the truck bed was filled with dirt. The packer bed filled with dirt constituted a solid and appears to have stood nearly as high as the Farmall tractor. When appellee made a U-turn with his tractor to his left in the street intersection, the packer was between the tractor and appellant as he approached from the north on Avenue H and it would have obstructed appellant's view of the mechanical operations of the tractor, particularly immediate-

ly before the collision occurred, although the body of appellee and the top part of the tractor should have been visible to appellant. The record further reveals that no other motorist or motor vehicle were near the street intersection at the time of the collision and that the weather was fair and visibility was good. The record also reveals that stop signs existed on 54th Street on each side of Avenue H at the said intersection and that a highway or street speed zone marker authorizing a speed rate of 50 miles per hour for the traveling of motor vehicles existed on Avenue H a block or two north of the street intersection in question, thus placing the said street intersection within the 50-mile speed zone on Avenue H.

Appellant, William C. Arnold, testified in effect that he was 22 years old and married, living at 5816 Avenue G, and working for Santa Fe Railway Company on a daily shift from midnight until 8:00 A.M. o'clock. He worked in railroad yards in front of the depot located about the 500 block on Main or 11th Street in Lubbock. In going to and from his work, he usually traveled Avenue A after intersecting it either from his home or the depot. He owned and traveled in a 1951 Chevrolet automobile which he kept in good running order and it was in good running condition at the time of the collision in question. On the morning of the collision, the witness had varied his route home by traveling on Avenue H and learned for the first time that the construction work on 54th Street was in progress. As he proceeded south on Avenue H, he observed appellee operating a Farmall tractor in a westerly direction pulling a packer, entering the intersection from 54th Street headed west. The witness was traveling south in the west lane of Avenue H at a speed rate of about 50 miles per hour within the 50-mile zone for travel on Avenue H. When he was approximately 250 or 300 feet from the intersection, he first saw appellee pulling into the intersection headed west at a very good rate of speed for a tractor, at which time he took his

foot off of the gas feed as he approached the intersection, however, he assumed that appellee would proceed west across the intersection since no warning or signal to the contrary was given by appellee. As appellee pulled his tractor across the pavement on Avenue H, he slowed down almost to a stop while his packer still remained on the west edge of the pavement. Appellant assumed that appellee slowed down to travel more slowly because that part of 54th Street west of Avenue H was rough and not paved. However, the witness pulled to his left to avoid the packer which still remained in the west lane of Avenue H when he saw appellee suddenly and without a warning of any kind reverse the direction of his tractor by turning quickly to his left while the packer was stopped on the west side of the pavement. Appellee then and there suddenly made a U-turn with the tractor to his left in the street intersection and headed east into the path of appellant's moving automobile at a time when appellant was only about 30 feet from the point of contact of the two machines which occurred in the middle lane of Avenue H. When appellant saw appellee had quickly reversed his direction and was headed for appellant's path in the highway, he quickly turned shorter and more sharply further to his left and speeded up his car a little in order to miss a collision with the tractor. By so doing his automobile did not collide with the packer and if he could have pulled his automobile one foot or possibly two feet further to his left his car would not have collided with appellee's moving tractor. As it was, the right front fender of his automobile collided with the front part of appellee's tractor causing damage to both machines and injuring appellee, who was thrown some distance from his tractor. If appellee had continued west, as the witness thought he would do until he observed appellee suddenly making a U-turn back east, there would not have been any collision or injury. If appellee had stood still where he apparently stopped or slowed down to make the U-

turn, there would not have been any collision or injury. Appellee was not in any danger until he suddenly made the U-turn with his tractor without giving any signal or warning to the witness who was then approximately 30 feet away and did all he could to avoid the collision during the short period of time he had before it occurred. The witness further testified that appellee must have locked the left front wheel of the tractor when he spun around to his left. The witness also testified he did not put on his brakes before the collision occurred because he thought appellee planned to continue west across the street intersection and after he saw appellee making the sudden U-turn and starting east with his tractor he thought he could turn sharply to his left, speed up a little and avoid the collision but he failed to do so by a distance of one foot, or a little more. At the time of the collision he put on his brakes, skidded his tires and turned off the pavement on his left-hand side. After the collision had occurred, he saw a road grader parked on 54th Street west of the pavement on Avenue H. The witness likewise testified that under the circumstances he could not have done anything more than he did to avoid the collision which occurred in the middle lane of the pavement on Avenue H. Most of these material related facts were established by the testimony of the appellant elicited by the cross-examination of him by appellee who put appellant on the stand as an adverse party. Little of his testimony was controverted and none of its material parts concerning the issues here presented was controverted.

The witness, Douglas M. Ballew, testified in effect that he had been working for Kerr and Middleton for about nine years; that Kerr and Middleton were engaged in paving highways and streets by contract and he usually operated a road grader for them; that on the occasion in question he and appellee, Busby, were using machinery in processing caliche while paving 54th Street east of Avenue H; that he spread the cali-

che with a road grader, had it watered down and appellee was packing it down with a pneumatic roller or packer on the morning the collision occurred; that on the said morning he and Busby began work about 7:00 A.M. o'clock before the collision occurred about an hour later; that they had each previously made several turns at the street intersection in question as they proceeded with the work; that just prior to the collision he had operated his tractor ahead of Busby, proceeding west to the intersection where he proceeded west across the said intersection, turned around in 54th Street on the west side of Avenue H, parked his tractor and was waiting for appellee Busby to proceed west into the intersection, turn around and they would both proceed back east. While waiting for Busby to proceed into the intersection and turn back east, the witness was seated in a cab on his tractor immediately west of the intersection. While he was seated in a closed-in cab, the said cab had a lot of glass all the way around and he could see through the glass; that appellee pulled into the intersection operating his tractor about four miles per hour pulling the packer and proceeding west in the intersection where he made a U-turn heading back east just as the witness observed appellant approaching the intersection in the west lane of Avenue H from the north at a speed rate of about 60 miles per hour and he did not know whether or not he later slowed down; that appellee did not pull all the way across the street intersection but turned his tractor around completely in the intersection without coming to a complete stop; that he did not know the exact position of appellant's automobile when appellee began to turn his tractor but while appellee was in the process of turning his tractor appellant changed lanes on Avenue H from the west lane to the middle lane or to his left and the point of impact was approximately four to six feet east of the middle lane on Avenue H and in the east lane thereof; that appellee was injured as a result of the collision and both the tractor and automobile were damaged. The witness

further testified on cross-examination in effect that he had known appellee some 30 years during which time they had been friends and had worked together for several years; that there was no flagman on duty and no warning signs for the traveling public at the intersection at the time of the collision; that there was a stop sign on 54th Street on the east side of Avenue H; that he did not know whether Busby stopped before entering the east side of the intersection or not but Busby did look both ways before entering the intersection; that appellee, Busby, could have locked the left wheel of his tractor and made a quick, short, abrupt turn to the left while the packer stood still; that it was always dangerous to make a U-turn in the street intersection where the collision occurred; that no effort was made to warn the traveling public of the U-turn made that morning by the packer in the street intersection when the collision occurred; that Busby was not in a dangerous situation until he made the U-turn with the tractor in the street intersection; that he did not see appellant as he pulled from the west part of the pavement and started around appellee.

Appellee, L. L. Busby, testified by deposition taken on March 30, 1955, to the effect that he was 68 years of age at the time of the collision, a widower, had three children but none of them dependent upon him; that he had for several years operated machinery in helping to farm and build roads; that at the time of his injury he was working for Kerr and Middleton Construction Company, for which company he had worked since 1948 or 1949; that on the occasion of his injury he could see and hear all right but he was looking ahead the way he was traveling and did not see or hear the approaching automobile which collided with his tractor; that there was no flagman stationed at the intersection on the occasion in question. It seems from an examination of appellee's testimony that he could remember very little about the details concerning the collision and his injury.

Mrs. Frances Allen, who did not seem to know any of the parties, testified in effect that she lived at 5403 Avenue H near the street intersection in question; that she saw the collision from her front yard; that she had seen the two men working on 54th Street and turning their machinery around in the street intersection for some time that morning before the collision occurred; that she saw appellee on the tractor going west across Avenue H during which time her attention was attracted by another lady (Mrs. Doyle Nichols) who inquired about a bus schedule and she did not see appellee turn the tractor around but she soon observed him again headed east with his tractor while appellant was closely approaching on Avenue H in an automobile at a speed rate of not more than 40 miles per hour; that she saw the two machines collide in the middle of Avenue H when appellee, Busby, was thrown up in the air and fell to the pavement where he was injured; that from her observation there was nothing appellant could have done to avoid the collision.

Mrs. Doyle Nichols testified in effect that she lived at 5443 Avenue H; that she was standing on the sidewalk near Mrs. Allen, waiting for a bus, when the collision occurred; that she saw appellee operating the tractor pulling the packer going west across Avenue H; that when he crossed Avenue H he stopped on the opposite side; that she then turned away and did not see appellee making a turn with his tractor but she soon heard a crash, when she turned in time to see appellee thrown in the air and fall on the pavement after the crash; that his tractor was then headed east; that both she and Mrs. Allen went to the scene of the collision.

The oral testimony of these five witnesses was all that was heard on the questions of liability and this testimony, together with the exhibits attached, was all of the evidence heard on the issues of liability.

There is little controversy about the material facts concerning the doctrine of discovered peril. Appellant testified that the point of impact of the two machines was in the middle lane of Avenue H while Ballew testified that the point of impact was in the east lane which was only a few feet from where appellant placed the point of impact. Mrs. Allen testified the collision occurred in the middle of Avenue H. We think the difference in their testimony with regard to this matter is not material. Ballew testified that appellant was traveling about 60 miles per hour immediately before he reached the street intersection and he did not know whether or not he slowed down before the collision. Appellant testified he was traveling about 50 miles per hour before he saw appellee in the street intersection when he removed his foot from the gas feed and slowed down. Mrs. Allen testified that appellant's speed rate was not more than 40 miles per hour as he approached the street intersection. We do not think the difference in their testimony concerning the matters here presented is material in determining the issues on discovered peril.

"The doctrine of discovered peril or last clear chance means certainly that the last clear chance must be a clear one. It implies thought, appreciation, mental direction, and lapse of sufficient time to act effectually upon the impulse to save another from injury." 30–B Tex.Jur. 331, Sec. 107.

"The plaintiff must show that the driver of the other vehicle, after having become aware that a collision was imminent, had time within which to control the movements of his vehicle. The driver of the other vehicle is not responsible where there is no evidence which tends to show that he could have done otherwise than he did in order to avoid the collision." Kennedy v. Wichita Production Co., Tex.Civ.App., 242 S.W.2d 261, 264.

The conduct of a person held liable by application of the doctrine of discovered peril approaches that of a deliberate or conscious wrongdoer. Elder v. Panhandle Stages Shuttle Service, Tex.Civ.App., 189

S.W.2d 762, 763, affirmed 144 Tex. 638, 193 S.W.2d 170; Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W.2d 931; Kennedy v. Wichita Production Co., supra.

We are unable to escape the conviction that appellee did not make out a case of discovered peril under the law governing such. The only inference deducible from relevant testimony is that Busby's peril first arose when he suddenly and without warning made a U-turn with his tractor in the street intersection and reversed his course. When appellant was approaching the street intersection in question and saw appellee operating his tractor pulling the packer proceeding west, he had a right to presume that appellee would not negligently and suddenly, without giving a signal or warning, reverse his direction and drive quickly into the path of appellant's moving automobile. Appellant contends that appellee violated the provisions of Sec. 68(a) of Article 6701d, Vernon's Ann.Civ.St., by suddenly making a U-turn with his tractor in a street intersection without giving an appropriate signal of his intentions to so turn. It has been held that one of the essential combination rules of the doctrine of discovered peril is that rule which gives everyone the right to assume that everyone else will observe the law until he discovers and realizes otherwise. Daily v. Sugarland Industries, Tex.Civ.App., 124 S.W.2d 199, reversed on other grounds, 135 Tex. 532, 143 S.W.2d 931.

We find no evidence from which a jury could even conjecture the distances which separated the parties at any given time or point in the sequence of evidence except that appellant was approximately 30 feet from the point of collision when appellee suddenly and without notice or warning turned his tractor and reversed his direction into the otherwise open path of appellant. This distance was given by appellant only. There is no evidence from which a jury could even conjecture within space of time or distance appellant could have stopped his automobile after he saw

appellee reverse his direction or that he could have done anything other than what he did do to avoid the collision after he saw appellee suddenly reverse his direction. The jury found that it was not negligence for appellant to turn his automobile to his left and the record conclusively reveals that he almost avoided the collision by so doing. Both Mrs. Allen and appellant testified there was nothing more he could have done to avoid the collision and such testimony was not controverted either directly or by circumstances. Appellee testified his sight was good. After appellee reversed his direction a slight shift of his vision to his left would have revealed the approaching automobile and made him conscious of his danger, in which event he could have suddenly stopped his tractor and extricated himself from his approaching perilous position. The tractor was being operated at a much slower rate of speed than the automobile. Appellee did not offer any testimony which even had a tendency to show that appellant had no reason to believe, after he discovered appellee's perilous position, that appellee could or would free himself from the impending danger, which is one of the elements of discovered peril that appellee was required to prove. Under the record presented, appellant would have been justified in believing that appellee could and would have stopped his tractor before the collision occurred and thus have extricated himself or freed himself from impending danger. Certainly appellee could have stopped his tractor suddenly as easily as he could have suddenly made a U-turn with it. If appellant had reason to believe that appellee would free himself from the impending danger, appellant is not to be held liable under the doctrine of discovered peril. Sisti v. Thompson, 149 Tex. 189, 229 S.W. 2d 610.

When appellant saw appellee operating his tractor pulling the packer west into the street intersection, he had a right to presume that appellee would continue to travel west and that he would not sud-

denly and negligently without warning reverse his direction and drive into the path of appellant's approaching automobile. Minugh v. Royal Crown Bottling Co., Tex. Civ.App., 267 S.W.2d 861, 864. Appellant was not bound to anticipate negligent conduct on the part of appellee but he had the right to rely upon the assumption that appellee was in possession of his faculties and would be able to control his tractor so as not to drive into a position of peril. Gulf, C. & S. F. R. Co. v. Pratt, Tex.Civ. App., 262 S.W.2d 775, 779, and other authorities there cited. Appellant cannot be said to have been guilty of negligence, in so far as the doctrine of discovered peril is concerned, unless he knew that appellee was going to suddenly reverse his direction of travel, turn his tractor into the path of appellant's moving automobile and thus place himself in a position of peril. Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967, 969. Appellant could not have realized that appellee was in a dangerous position without realizing also that it was a dangerous situation for himself and he was not required under the doctrine of discovered peril to protect appellee at his own peril.

For the reasons stated it is our opinion that the evidence conclusively reveals that appellant, Arnold, did not discover the perilous position of appellee, Busby, in time to have avoided the collision and injury by the use of all the means at his command commensurate with his own safety and that appellant did exercise every means at his command under the circumstances in an effort to avoid the collision which resulted in appellee's injuries. Burton v. Billingsly, Tex.Civ.App., 129 S.W.2d 439; Miller v. Rhodius, Tex.Civ.App., 153 S.W.2d 491; Thurmond v. Pepper, Tex. Civ.App., 119 S.W.2d 900; Schumacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880.

Viewing the evidence in a light most favorable to appellee's contentions, it is our opinion that there is no evidence of probative force to support recovery against appellant upon the doctrine of discovered peril. In any event, the evidence is insufficient to support such recovery upon such grounds and certainly the findings of the jury to the issues of discovered peril, and particularly to the issue that appellant discovered appellee's perilous position in time to have avoided the collision, are against the overwhelming weight and preponderance of the evidence. Appellant's points raising such questions are sustained.

In open court appellant waived his complaint made in Point 4. In the alternative, in Point 6, appellant charges there is a conflict in jury findings but we did not so find and therefore overrule such a charge, although it was made only in the alternative. All of appellant's other points of error are overruled and particularly Points 9 to 18, both inclusive, complaining about jury misconduct, alleged errors in the court's charge to the jury other than those previously herein passed on, and excessive damages being awarded. Such complaints have all been carefully examined but we do not find any reversible error in any of them.

Nobody has complained here about that part of the trial court's judgment denying appellant any recovery on his cross-action. In any event, it appears from the record such was proper upon the jury verdict which was well supported by the evidence in this matter. Under the provisions of Rule 434, Texas Rules of Civil Procedure, and other authorities there cited, we do hereby reverse that part of the trial court's judgment awarding damages in the sum of $25,000 to appellee as against appellant, out of which sum an award of $15,969.04 was likewise made to intervenor, New Amsterdam Casualty Company, and we do hereby render judgment to the effect that appellee and intervenor take nothing by reason of their suit. The cost is adjudged jointly and severally against appellee herein and the said intervenor. Affirmed in part and reversed and rendered in part.