Joe F. TERRALL et ux., Appellants,

v.

MIDWEST FARMS DIVISION OF the SOUTHLAND CORPORATION, Appellee.

No. 8126.

Court of Civil Appeals of Texas, Texarkana.

March 20, 1973.

Rehearing Denied April 17, 1973.

**634**

Errol Friedman, Harkness, Friedman & Kusin, Texarkana, for appellants.

Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellee.

CORNELIUS, Justice.

This was a suit to recover damages caused by the death of Barry Neil Terrall, which resulted from a collision involving his automobile and a milk truck owned by the appellee and driven by George Halter. The action was filed by appellants Joe F. Terrall and wife, the parents of the deceased, against Midwest Farms Division of the Southland Corporation, appellee. The parties will be referred to here as in the trial court. At the close of plaintiffs' evidence, defendant moved for an instructed verdict. The trial court granted the motion, withdrew the case from the jury, and rendered judgment that plaintiffs take nothing.

Plaintiffs have perfected this appeal, bringing forth only one point of error, which is that the trial court erred in granting defendant's motion, since plaintiffs introduced sufficient evidence to make a case for the jury.

The only theory of recovery advanced by plaintiffs was the alleged liability of the defendant under the doctrine of discovered peril.

The trial was very brief and the statement of facts covers only 40 pages. Plaintiffs used only the testimony of the deceased's father on damages, and portions of the deposition of the defendant's truck-driver in attempting to raise sufficient evidence to authorize submission of the case to the jury on the issues of discovered peril.

Defendant's truck, a milk delivery truck, was being driven north on Highway 82 in Bowie County, Texas. At a point near where Interstate 30 passes over Highway 82, there is a road which crosses Highway 82 going easterly, which road proceeds at a later point into Interstate 30. The truck-driver testified that the deceased's automobile approached Highway 82 on the cross-road; that he first saw the car at a time when he came over a hill on Highway 82, about 300 to 320 feet distant; that the car was moving, and that it stopped at the west edge of Highway 82, with its front slightly protruding into the highway; that he was between 200 and 300 feet away when the car stopped; that when he was only 25 or 30 feet from the intersection, the deceased's automobile started up and moved into Highway 82 in front of him; that his front bumper hit the deceased's automobile dead-center between the front and rear door; that the deceased's automobile at the time of impact was at a point where it blocked substantially all of Highway 82; and that his truck was loaded with milk at the time and was traveling between 40 and 50 miles per hour. At other points in his testimony the truckdriver testified he first realized that the deceased was "going to pull out" in front of him "just like that" (snapping his finger to demonstrate the instantaneous nature of it). However, upon questioning, he characterized this time interval as being from three to four seconds. He further testified that he hit his brakes, but by the time he hit his brakes "he had . . . . hit me." He further testified that when he saw the deceased's automobile approach Highway 82, he slowed down, but when the car stopped at the edge of Highway 82, he took his foot off the brakes and began to resume his speed. At the point of impact the deceased's car was at a point on Highway 82 where its front wheels were about at the eastern edge of the pavement.

There was no evidence concerning how quickly, or in what distance the loaded milk truck could have been stopped or slowed sufficiently to avoid the collision, or what was its weight, or how it was equipped, and whether such equipment was in good working order. Neither was there evidence of the weather or road conditions.

The sole question presented is whether the plaintiffs introduced evidence of liability under the doctrine of discovered peril which entitled them to submit the case to the jury thereon.

In determining this question, we are required to disregard all evidence adverse to the plaintiffs and consider only that evidence, together with all reasonable inferences properly drawn therefrom, favorable to the plaintiffs' case. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943); Welch v. Ada Oil Company, 302 S.W.2d 175 (Tex.Civ.App. Texarkana 1957, error ref'd, n. r. e.). After doing so, if there is any evidence of probative force tending to prove the essential elements of liability under the doctrine of discovered peril, the trial court's action was error and the cause must be reversed. White v. White, supra; Thurmond v. Pepper, 119 S.W.2d 900 (Tex.Civ.App. Galveston 1938, error dism'd).

In a discovered peril case the burden is upon the plaintiff to adduce some evidence tending to prove each essential element. Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112 (Tex.Com.App.

1942); Texas & New Orleans Ry. Co. v. Hart, 163 Tex. 450, 356 S.W.2d 901 (1962); Parks v. Airline Motor Coaches, Inc., 145 Tex. 44, 193 S.W.2d 967 (1946); Missouri-Kansas-Texas Railroad Company v. McFerrin et al., 156 Tex. 69, 291 S.W.2d 931 (1956); Dupree v. Burlington-Rock Island R. Co., 251 S.W.2d 559 (Tex.Civ. App. Galveston 1952, error ref'd). In Texas the essential component elements of liability in a case of discovered peril are:

1. That the deceased was in a position of peril;

2. That the defendant discovered or realized the perilous position of the deceased in time to have averted the injury by the use of the means at his command, commensurate with his own safety;

3. That the defendant thereafter failed to use such means;

4. That the defendant had no reason to believe that the deceased could or would extricate himself from the position of peril.

Sisti v. Thompson, 149 Tex. 189, 229 S.W. 2d 610 (1950); 40 Tex.Jur.2d 624; Arnold v. Busby, 298 S.W.2d 627 (Tex.Civ.App. Amarillo 1957, error ref'd, n. r. e.).

Originally, Texas cases spoke of only the first three elements as being necessary in a discovered peril case. Apparently the reason for omitting No. 4 was the view as expressed by Justice Griffin in his dissent in Sisti v. Thompson, supra, that "possible extrication" was really a part of the defendant's discovery of the peril, and that one did not discover or realize the peril unless and until he realized that the plaintiff would not or could not extricate himself. But since the Supreme Court case of Sisti v. Thompson, supra, the question of possible extrication has been recognized as one of the essential elements of a case of discovered peril and has been held applicable to collisions between motor vehicles, as well as to collisions between trains and vehicles or persons. Arnold v. Busby, supra;

Gentry v. Southern Pacific Company, 457 S.W.2d 889 (Tex.Sup.1970); Murphy v. Whitehurst, 300 S.W.2d 758 (Tex.Civ.App. San Antonio 1957, error ref'd, n. r. e.).

Our question then is, did the plaintiffs here submit evidence of probative force on the essential elements of the alleged cause of action?

■ Disregarding all adverse evidence, the evidence in the record which can be construed as favorable to the plaintiffs is the following:

"Q. When did you realize, sir, that this man was going to pull out in front of you like that? When did you get your first inkling that he was going to do that?

A. Just that quick. (snaps finger).

Q. By that quick do you mean . . . . .

A. Three or four seconds.

Q. Three or four seconds before the impact?

A. Yes. Just that long. It didn't take no longer than that.

 * * * * * *

Q. You said it didn't take any longer than 3 or 4 seconds, would it have taken any less than 3 or 4 seconds?

A. I doubt it.

 * * * * * *

Q. Did you hit your brakes?

A. I sure did.

Q. Did you leave any skidmarks that you know of?

A. By the time I hit my brakes he had done hit me."

There is the additional fact that the front of the deceased's car extended slightly into Highway 82 when it stopped, and plaintiffs apparently contended that this fact could have indicated to the truckdriver that the

deceased was inattentive or was contemplating pulling out in front of the truck, but the only testimony on this is from the truckdriver and he maintained that it did not raise any suspicion in his mind at the time. Although some of the quoted testimony is contradicted elsewhere by the driver, it is for the jury to resolve conflicts in one's testimony, and if the quoted testimony, together with reasonable inferences to be drawn therefrom, or from the evidence as a whole constitutes probative evidence on the essential elements of discovered peril, the case must have been submitted to the jury.

It is obvious that at some point the deceased was in a position of peril. It therefore becomes necessary to determine if there was evidence on the other essential elements. We do not believe there was.

■ Regardless of whether it is stated as a separate element or as a part of "discovery," for the defendant to realize that the deceased was in a perilous position, it must be apparent or reasonably apparent to him that he cannot or will not be able to get out of the way. Until that state of facts exists, no duty rests upon the driver. He doesn't realize the perilous position of the deceased until that instant. See Justice Griffin's dissent in Sisti v. Thompson, supra, and Arnold v. Busby, supra.

The only definite testimony as to when the deceased's automobile started moving is the truckdriver's testimony that it was not until he was 25 or 30 feet from impact. We disregard this as adverse to the plaintiffs. But in doing so, we are left with no testimony as to when the deceased began to move the automobile, (Missouri-Kansas-Texas Railway Company of Texas v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956); Welch v. Ada Oil Company, 302 S.W.2d 175 (Tex.Civ.App. Texarkana 1957, error ref'd, n. r. e.), unless we construe the driver's statement that he first realized that the deceased "was *going* to pull out in front . . . . " of him three or four seconds prior to impact, as meaning that the car actually started moving onto Highway 82 at that time. If this assumption can be made, then plaintiffs no doubt contend that the additional testimony that by the time the driver hit the brakes he had hit the deceased, could indicate a negligent delay in the application of the brakes.

However, if such testimony could be so construed, the driver, after such realization or movement, must have had time to observe and judge the speed of deceased's automobile and its probable movements before he could realize that the deceased probably would not or could not reach a point of safety before the truck would arrive at the crossing. Until he realized this, he had not discovered the peril and had not reached the point where he realized that the deceased probably would not extricate himself. We are left without any testimony or inference as to when this discovery or realization occurred, and it is therefore only possible to speculate on whether the driver had time after discovery to avert the injury by the use of the means at hand commensurate with his own safety.

There was no testimony as to the rate of acceleration or speed of the deceased's automobile as it moved onto Highway 82, even though the testimony showed that there were two automobiles stopped immediately behind the deceased when he stopped at the crossing. None of the occupants of these cars testified. Plaintiffs contend that assuming the deceased's automobile started moving three or four seconds before impact, it must have moved at a speed of about five miles per hour, since it traveled 20 or 22 feet to the point of impact. Even so, there is no indication as to when defendant's driver became aware that the car, by failing to stop again or accelerate, probably would not or could not extricate itself from danger.

■ It is not every time that one sees a vehicle on the highway or track before him, or moving into the highway before him, that said vehicle is in peril. Texas & N.O.R. Co. v. Grace, 204 S.W.2d 857

(Tex.Civ.App. Beaumont 1947, no writ); Sisti v. Thompson, supra; Turner v. Texas Company, supra. The perilous position in an intersection or crossing collision only arises when it appears that a collision is imminent. Turner v. Texas Company, supra; Welch v. Ada Oil Company, supra; Arnold v. Busby, supra; Kennedy v. Wichita Production Co., 242 S.W.2d 261 (Tex.Civ.App. Fort Worth 1951, error ref'd, n. r. e.). All drivers using the highway know the hazards involved in crossings and intersectional traffic. When an automobile pulls to the entrance of a crossing and stops, the drivers of vehicles on the other street or highway are entitled to assume that the stopped vehicle will remain stationary until opposing traffic has passed, or that if it attempts to cross the road ahead of traffic it will do so at a time and at a rate of acceleration which will enable it to cross safely. Welch v. Ada Oil Company, supra; Sisti v. Thompson, supra; Parks v. Airline Motor Coaches, supra. It is common knowledge that many persons desiring to cross a street will stop and judge the speed and distance of oncoming traffic, and then reckoning that they can cross before the oncoming traffic arrives, proceed to do so, oftentimes in safety. Unless the injured driver is inattentive and the defendant is aware of his inattentiveness, the defendant is entitled to assume that he is in possession of his normal faculties, and that he will not attempt to cross the highway unless he can do so at a rate of acceleration which will enable him to cross safely ahead of oncoming traffic. It is only when the oncoming driver has time to realize that this probably cannot be done that the duty devolves upon him to use the means at his command to avoid the collision. Sisti v. Thompson, supra; Restatement of Torts, Vol. 2, page 1253, Sec. 479. There is no evidence whatsoever in this case that the deceased was inattentive, or that if he were, the defendant's driver was aware of his inattentiveness.

If we take the truckdriver's estimate of distance as correct, he was only 25 or 30 feet from the crossing when the deceased's automobile moved onto the highway. Obviously this would not be enough time for a truck moving 40 to 50 miles per hour to avoid the collision. If, on the other hand, we take the defendant's driver's estimate of the time interval (that is, three or four seconds) as the correct time of the beginning of movement, the truck would have been 235 or more feet from the crossing at that time. The deceased would not necessarily be in peril at that point, because the deceased by accelerating could have crossed to the other side in safety. In Di Sandro v. Griffith, 188 Cal.App.2d 426, 10 Cal.Rptr. 595, a California case involving a similar situation, the court held that if defendant's truck was some 400 feet from the crossing, traveling 40 to 50 miles per hour when the plaintiff attempted to cross, no duty arose on the defendant at that point because the plaintiff could have accelerated and thus avoided the collision and discovered peril was not applicable. It was only when the defendant's driver realized that the deceased could not or would not extricate himself and that a collision was imminent that he had a duty to act. Sisti v. Thompson, supra; Thurmond v. Pepper, supra. A finding by the jury of such facts in this case would necessarily be based entirely upon speculation and conjecture.

■ Liability under the doctrine of discovered peril is nearly but not quite the same as intentional or deliberate injury. Kennedy v. Wichita Production Company, supra. Such a finding of inhumane conduct will never be imputed or presumed, but must be based upon competent evidence. Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967 (1946); Texas & N.O. Railway Company v. Hart, supra; Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880 (Tex.1949); Dupree v. Burlington-Rock Island Railway Company, supra.

■ There must be time, after discovery of peril and lack of possible extrication, for appreciation, thought, mental direction

and action by the defendant. Schuhmacher Co. v. Posey, supra; Welch v. Ada Oil Company, supra. Not only must the defendant's chance to avoid the collision be the last chance, but it must be a clear one. Texas & N.O. Railway Co. v. Hart, supra; R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (Tex.Sup.1960); Schuhmacher Co. v. Posey, supra. The plaintiffs' evidence here indicates neither, as the deceased may have had the last chance to avert injury by accelerating, and we cannot judge whether the defendant's driver's chance was clear in the absence of evidence as to the time of discovery and lack of possible extrication.

 Appellants urge that time and distance may be calculated mathematically, and that the discovery of peril in time to avoid injury may be proven by circumstantial evidence. We agree, but there must be facts and circumstances proven from which accurate calculation can be made, and from which reasonable inferences may be drawn. On the crucial point of discovery of peril in time, there is none in this case. Presumption cannot be based upon presumption, or inference upon inference. Burlington-Rock Island R. Co. v. Pruitt, 160 S.W.2d 105 (Tex.Civ.App. Waco 1942, error ref'd); Arnold v. Busby, supra.

The cases cited by appellant on proof of discovery by circumstantial evidence and mathematical calculations are distinguished on the facts, because in them there was proof of facts or circumstances indicating that at a given point or time the defendant was aware of the injured's peril, and was aware that he would not or could not extricate himself. For example, in Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (Tex.Sup.1952), there was evidence that at a specific point at a considerable distance the trainman was aware that the plaintiff was pursuing a course which he would probably continue to pursue until it brought him to injury. Such is not present in our case.

Viewing the evidence in the light most favorable to the plaintiffs, we conclude that they failed in their burden to present evidence of probative force on these vital issues, and that the trial court was correct in rendering judgment for the defendant.

The judgment is accordingly affirmed.